UNITED STATES of America, Plaintiff,
Appellee-Cross-Appellant,

v.

Ben T. LOWELL and Louise D. Lowell,
Defendants, Appellants-Cross-Appellees.

Nos. 75–2341 and 75–2342.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 7, 1977.

Decided June 7, 1977.

Mark N. Mutterperl, Washington, D. C., for U. S.

James L. Howlett, Bloomfield Hills, Mich., for Lowell et al.

Before PHILLIPS, Chief Judge, ED-WARDS, Circuit Judge, and SILER,* District Judge.

SILER, District Judge.

The Interlakes Machine & Tool Co. (Interlakes), a corporation, borrowed $180,-000.00 from the Presque Isle Bank, Rogers City, Michigan, with the assistance of the Small Business Administration pursuant to 15 U.S.C. § 631, *et seq.* In accordance with the agreement contained in an earlier application approved by the Small Business Administration (SBA), Interlakes provided a promissory note with personal guaranties signed by Richard Templeton and George Steinmetz, who were officers of the corporation. The promissory note and the personal guaranties were executed on the same date that the loan was closed. However, as the application for the loan had recited that a third person, Glen Christensen, would also sign the guaranty, because of the unavailability of Christensen and his wife to sign the guaranty, the bank and SBA approved the substitution of defendants, Ben T. Lowell and Louise D. Lowell, his wife, as guarantors. They signed the guaranty five days after the promissory note was signed. The bank assigned the promissory note and the guaranty instruments to the SBA. Subsequently, Interlakes defaulted and this action was brought in the district court to recover the outstanding indebtedness of $117,528.47.

The Lowells offered to submit evidence which would prove that the closing officials disbursed funds without the Christensen guaranty on the belief that two guaranties would suffice, that it was later determined that the SBA would require three guaranties, and that the Lowells complied with this request after the loan had been closed upon advice from the closing officials that the third guaranty was a technical requirement and that they would under no circumstances be called upon to repay the loan. The guaranty which had been prepared for the Christensens to sign was modified by deleting the Christensen names and typing the Lowell names on the following lines. It was on a standard printed SBA form and set forth no indication that the obligations were governed by Michigan or federal law.

The district court granted summary judgment on behalf of the United States against Interlakes and all the signers of the guaranty, including the Lowells. *United States v. Interlakes Machine & Tool Co.,* 400 F.Supp. 59 (E.D.Mich.1975). Thereafter, the Lowells moved the court to alter or amend the judgment, which was denied by the court, but it subsequently entered an order granting the motion by the defendants to correct a mistake in judgment, pursuant to Rule 60(a), Federal Rules of Civil Procedure, reflecting that at the time that Ben T. Lowell and Louise D. Lowell signed

---

* The Honorable Eugene E. Siler, Jr., United States District Judge, Eastern and Western Districts of Kentucky, sitting by designation.

as guarantors for the loan, they were husband and wife. This was corrected because Michigan retains the law of coverture which, in the opinion of the district court, would preclude the United States from executing on separately-owned property of Mrs. Lowell. Instead, the execution upon the judgment could only be effected upon property held by the defendants as tenants by the entirety or as joint tenants with rights of survivorship, as the consideration for the note did not pass directly to the wife's separate estate. See *Koengeter v. Holzbaugh*, 332 Mich. 280, 50 N.W.2d 778 (1952); *City Finance Co. v. Kloostra*, 47 Mich.App. 276, 209 N.W.2d 498 (1973).

Cross appeals were filed. The Lowells assert that the court erred in granting summary judgment against them, whereas the United States asserts that the court erred by amending its judgment. The issues before this Court turn upon those questions.

### SUMMARY JUDGMENT

The defendants urged that there were genuine issues of material fact which would have been determined in a trial and that the district court erred as a matter of law in finding there was consideration for the contract.

■ On the issue of fraud raised by the defendants, the district court held that even if the bank or SBA officials told the guarantors that they would not be liable on their guaranties, the guarantors were obligated to ascertain whether such officials were acting within the scope of their authority in doing this. See *Brubaker v. United States*, 342 F.2d 655 (7th Cir. 1965). The district court properly found as a matter of law that the United States was "neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit." *United States v. City and County of San Francisco*, 310 U.S. 16, 32, 60 S.Ct. 749, 757, 84 L.Ed. 1050 (1940).

■ With respect to the issue of a lack of consideration for the loan, the defend-ants stress the fact that they did not sign as guarantors until after the loan was completed. This is an uncontroverted fact. However, the district court correctly held that new consideration is not required for a contract of guaranty executed subsequent to the principal contract, where it is executed pursuant to an understanding had before and is an inducement to the execution of the principal contract. See *Pacific Industries, Inc. v. Mountain Inn, Inc.*, 232 F.Supp. 801 (W.D.Ark.1964); *First National Bank v. International Machines Corporation*, 279 Minn. 188, 156 N.W.2d 86 (1968).

Indeed, the face of the guaranty agreement expressly states that the defendants executed the agreement in order to induce the bank to make the loan and provide security for the loan. It was a requirement of SBA that a loan be secured and that a guaranty was one method of securing the loan. 13 C.F.R. § 122.2(c). Where this method is chosen, it is a condition that must be met before the loan will be closed. 13 C.F.R. § 122.19.

The closing of the loan was made by bank officials on the erroneous belief that only two guarantors were necessary. When this was brought to the attention of the bank officials by the SBA, the Lowells agreed to sign as guarantors. Ben T. Lowell was not a person who just walked into the bank off the street and signed the document. He was a stockholder of the corporation and was the prime mover between Interlakes and the bank for this loan.

■ Thus, although it is the rule in this jurisdiction that "a trial judge should be slow in disposing of a case of any complexity on a motion for summary judgment," *S. J. Groves & Sons Co. v. Ohio Turnpike Commission*, 315 F.2d 235, 237 (6th Cir.); *cert. denied*, 375 U.S. 824, 84 S.Ct. 65, 11 L.Ed.2d 57 (1963), nevertheless, the court properly construed the evidence in the case in its most favorable light for the party opposing the motion, *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir. 1962), and considering the affidavits filed, properly held as a matter of

law that summary judgment should be granted for the United States. See *Bryant v. Commonwealth of Kentucky*, 490 F.2d 1273 (6th Cir. 1974).

## MODIFICATION OF JUDGMENT

█ The United States has appealed from the order modifying the judgment, because, it asserts, by doing so, the district court has held that the Michigan law of coverture will be applicable in the execution of this judgment. The first question to be decided is whether this issue of coverture is properly before the court. The defendants have argued that this matter is not ripe, see, e. g., *Poe v. Ullman*, 367 U.S. 497, 504, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961); *International Longshoremen's Union v. Boyd*, 347 U.S. 222, 74 S.Ct. 447, 98 L.Ed. 650 (1954), as the district court has merely modified the judgment and the issue of coverture will only arise after the United States attempts to seek execution against the separate property of Louise D. Lowell. In doing this, the defendants may be forcing the issue, for there does not appear in the record on appeal any request for a stay of the judgment of the district court or the filing of a supersedeas bond pursuant to Rule 62(d), Federal Rules of Civil Procedure, or Rule 8, Federal Rules of Appellate Procedure. In effect, this would cause the United States to request execution upon the property of the defendants and, if the value of the jointly held property was not as great as that of the judgment, then the United States would ask for execution upon Mrs. Lowell's individually-held property. This, in turn, would force the district court to rule in accordance with its prior finding that the Michigan law of coverture applies, and then the United States would have to come back to this Court on an appeal therefrom. As no stay or supersedeas bond was filed, it is possible that the United States has already done this, although it is not in the record. We find that a genuine case or controversy exists on this point and no useful purpose would be served by having the matter remanded until such time as the United States commences the execution on the property. Unlike the situation in *International Longshoremen's Union v. Boyd, supra*, the government in this case either has, or intends to, set in motion the machinery to execute the judgment upon the property of Mrs. Lowell.

█ With regard to whether the Michigan law of coverture applies in this case, we hold that it does not. In concluding that the Michigan law of coverture precluded execution upon the separately held property of Mrs. Lowell, the district court depended primarily upon the case of *United States v. Yazell*, 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966). There, it was held that the Texas coverture law precluded the United States from recovering upon a loan made to Mr. and Mrs. Delbert L. Yazell by execution upon the separate property of the wife. Two factors were important in the decision in *Yazell*. They were: (1) the loan was individually negotiated with specific reference to Texas law; and (2) there was no federal statute, regulation or any contract provision indicating that the state law would be disregarded.

As a matter of fact, the Supreme Court seemed to invite legislation or regulations when it stated at 352, 86 S.Ct. at 506:

> We do not here consider the question of the constitutional power of the Congress to override state law in these circumstances by direct legislation or by appropriate authorization to an administrative agency coupled with suitable implementing action by the agency.

Accordingly, under the powers authorized by 15 U.S.C. § 634, at a time prior to the date on which the promissory note and guaranties were signed, 13 C.F.R. § 101.1(d) was promulgated as follows:

> *Applicable law.* (1) Loans made by SBA are authorized and executed pursuant to Federal programs adopted by Congress to achieve national purposes of the U. S. Government.
>
> (2) Instruments evidencing a loan, obligation of security interest in real or personal property payable to or held by the Administration or the Administrator, such as promissory notes, bonds, guaranty

agreements, mortgages, deeds of trust, and other evidences of debt or security shall be construed and enforced in accordance with applicable Federal law.

(3) In order to implement and facilitate these Federal loan programs, the application of legal procedures, especially for recordation and notification purposes, may be utilized to the fullest extent feasible and practicable. However, the use of local procedures shall not be deemed or construed to be any waiver by SBA of any Federal immunity from any local control, penalty, or liability.

(4) Any person, corporation, or organization that applies for and receives any benefit or assistance from SBA, or that offers any assurance or security upon which SBA relies for the granting of such benefit or assistance, shall not be entitled to claim or assert any local immunity to defeat the obligation such party incurred in obtaining or assuring such Federal benefit or assistance.

If this regulation is the federal policy which the Supreme Court was inviting in *Yazell* then the next question is what is the applicable federal law in this situation. In *Clearfield Trust Co. v. United States*, 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943), it was held that a uniform rule is desirable to protect the United States from the "vagaries of the laws of the several states." Moreover, this Court held in *United States v. Helz*, 314 F.2d 301 (6th Cir. 1963), that the Michigan law of coverture did not apply in fashioning federal law to a Federal Housing Administration loan. The *Clearfield Trust Co.* and *Helz* cases were distinguished in *Yazell* primarily because *Yazell* apparently arose from a negotiated loan not made on a standard nationwide form. Therefore, the Court did not overrule the decision in *Helz*. 382 U.S. 348 n. 15, 86 S.Ct. 500. *Helz* was reaffirmed later, with specific reference to *Yazell*, when this Court again adopted a uniform federal law under the Bankhead-Jones Farm Tenant

Act in *United States v. Carson*, 372 F.2d 429 (6th Cir. 1967).

 Federal law must be applied in this case pursuant to regulation, and federal law mandates that the "peculiar and obsolete," *United States v. Yazell, supra*, 382 U.S. at 351, 86 S.Ct. 500, law of coverture not be allowed to stifle the federal government programs in Michigan, when it would not be applicable in any other state in the union.[1]

Therefore, we reverse the district court's amended judgment and remand the cause with instructions that the previous summary judgment of April 24, 1975, be reinstated and that the amended judgment of August 8, 1975, wherein the defendants are reflected as being husband and wife, be vacated and set aside.

REVERSED AND REMANDED.

---

1. In *United States v. Yazell, supra* at 351, 86 S.Ct. 500, the Supreme Court stated that only Michigan and Texas had a coverture law and that Texas had repealed its statute during the pendency of the *Yazell* case.