RICHARD G. SILVA and MARIAN PAVAO SILVA, Plaintiffs-Appellees, *v.* BERNICE BISBEE and MIDKIFF REALTY, INC., Defendants-Appellants, and FIRST AMERICAN TITLE COMPANY OF HAWAII, Defendant, and TOSHIO MORIKAWA, Defendant-Appellee

NO. 7114

MAY 13, 1981

HAYASHI, C.J., PADGETT AND BURNS, JJ.

## OPINION OF THE COURT BY PADGETT, J.

This is an appeal from a judgment entered pursuant to a verdict after a jury trial. Appellants contend that a directed verdict should have been granted in their favor on the issues of emotional distress and fraud and that there was error in denying their motion for a new trial. We hold there was no error below and affirm.

Defendant-Appellant Bernice Bisbee (hereinafter called "Bisbee") is a real estate broker employed by Defendant-Appellant Midkiff Realty, Inc. (hereinafter called "Midkiff"). In September of 1972, she obtained from the Plaintiffs-Appellees Silvas (hereinafter called "Silvas") an exclusive listing agreement for the sale of their property located in the town of Kaleheo, Kauai, fronting on Kaumualii Highway. The land area was 34,392 square feet and a two-bedroom and a four-bedroom house were situated on the property. The Silvas informed Bisbee that they wanted $100,000 for their property. Sometime later, Bisbee obtained an offer for the property from one David Larsen. In a discussion between Bisbee and the Silvas, the down payment was set at $35,000 with monthly payments of $2,000 per quarter. A DROA to this effect was executed according to which the $2,000 included interest on the balance at 8% per annum.

Larsen subsequently informed Bisbee that he was not able to go through with the transaction. A joint venture under the name of Pacific Equity Associates composed of six members was then formed. Bisbee was to manage the joint venture and to receive ten percent of the profits from it in return for her services. One of the members of the joint venture was Toshio Morikawa and he subse-

quently appeared as the purchaser of the property when the transaction closed in July, 1973. Bisbee did not inform the Silvas of her pecuniary interest in the joint venture or of the fact that it was the purchaser rather than Morikawa personally. In August of 1973, Bisbee prepared for the Associates a financial statement listing the market value of the Silva property at $149,424.

The $35,000 payment was made and thereafter quarterly payments were made to the Silvas through Bisbee. When the Associates failed to come up with the necessary funds to make payments, Bisbee supplied them. However, according to the testimony, the quarterly payments were almost always made late and this caused emotional distress to Richard G. Silva, who testified that he had informed Bisbee of this fact. Testimony as to his emotional distress was corroborated by his wife Marian Pavao Silva. Eventually, because of the defaults, a suit to cancel the sale and for damages for fraud, including punitive damages, was brought. All party defendants other than Bisbee and Midkiff Realty, Inc. were dismissed in one manner or another before the case was submitted to the jury. At the close of the plaintiffs' case, Bisbee and Midkiff moved for a directed verdict on the issues of emotional distress and fraud which was eventually denied. The jury returned a verdict against them for $29,000 general damages and $50,000 punitive damages. After a motion for a new trial was denied, this appeal followed.

Bisbee and Midkiff concede that as brokers under a listing contract, they stood in a fiduciary relationship to the Silvas. It is axiomatic that a fiduciary cannot have a pecuniary interest in the purchase of property from the *cestui que trust* without full disclosure. No such disclosure was made here. Bisbee's conduct in causing the purchase of the property by a joint venture in which she had a pecuniary interest without disclosing to the Silvas that pecuniary interest constituted constructive fraud as a matter of law. The question then, on the directed verdict motion, was whether there was evidence of damage to the Silvas.

On the question of damage, the sale to Morikawa, who was the nominee for the joint venture, closed in July of 1973 at $100,000. In August of 1973, according to Exhibit 17, Bisbee estimated the market value of the property in question to be $149,424. In her testimony, Bisbee attempted to explain this away as being an estimate of future value. However, that is not what the exhibits say, and a jury,

from the facts, could have decided that when the property was sold to the joint venture, it was worth far in excess of the $100,000 purchase price; that Bisbee knew this and failed to disclose it to the Silvas as well as failing to disclose her pecuniary interest in the purchaser. The motion for directed verdict on the issue of fraud was therefore properly denied.

As to the issue of emotional distress, the appellants' motion below was expressly based upon the decision of the Supreme Court of Hawaii in *Rodrigues v. State,* 52 Haw. 156, 472 P.2d 509 (1970). Appellants here argue however, that the emotional distress grew out of the failure to make the payments on time not out of the fiduciary relationship and that therefore, the case is one sounding in contract and governed by *Dold v. Outrigger Hotel,* 54 Haw. 18, 501 P.2d 368 (1972) rather than *Rodrigues, supra.*

Rule 50(a), HRCP, requires that the party moving for a directed verdict specify the grounds. It is well-settled that such a party cannot complain on appeal that the motion should have been granted on a ground not specified. 9 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, § 2533 (1971). Assuming, without deciding, that there is a distinction between a tort emotional distress situation under *Rodrigues* and a contract emotional distress situation under *Dold,* the fact remains that *Dold* was not called to the attention of the trial court and that the whole argument below was based upon the *Rodrigues* standard. Appellants are therefore here bound by that standard. In *Rodrigues v. State, supra,* at 173 of the Hawaii Reports, the Supreme Court stated:

> We hold that serious mental distress may be found where a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case.

Later in the opinion, in a footnote on page 175, the Supreme Court stated:

> [8] Against the holding it is said that juries are now "without restraint" and that the law should not encourage "attachment to material possession" "in an age when man has surrounded himself with a veritable plethora of material possessions." Indeed, our decision does shift a part of the burden of administering claims of mental distress inordinately assumed by the courts to juries. As in other mental tort cases, the jury, representing a cross

section of the community is in a better position to consider under what particular circumstances society should or should not recognize recovery for mental distress. We have not decided that a value should be put on "attachment to material possessions" but that that decision is properly a function which should be shared with the jury. Moreover, the jury is no less "without restraint" under the "reasonable man" standard we have established than in innumerable other negligence cases where a "reasonable man" standard and general tort principles are applied and where the preliminary issue of whether the case presents questions on which reasonable men would disagree is for the court.

We read *Rodrigues* to say that given some evidence of emotional distress in the record, the question of whether such distress amounted to serious mental distress which a reasonable man normally constituted could not adequately cope with is one for the jury. Since there was testimony that Bisbee was informed of the fact of emotional upset arising out of the late payments, the test of foreseeability set forth in *Rodrigues, supra,* was clearly met. Hence, there was sufficient evidence to submit to the jury the question of emotional distress and the motion was properly denied.

What we have said disposes of the contention that Midkiff's motion for a new trial was improperly denied. Bisbee was Midkiff's agent and Midkiff is equally liable with her for the damages arising out of her breach of fiduciary duty as well as the damages arising out of the claimed emotional distress, if any were found by the jury.

The last points raised are that the evidence was insufficient to justify the award of punitive damages and that those damages are excessive. The amount of punitive damages is a matter which is peculiarly within the province of the jury. There was ample evidence from which the jury could have concluded that what Bisbee did was done willfully, wantonly or maliciously or characterized by some aggravating circumstances. *Howell v. Associated Hotels, Ltd.,* 40 Haw. 492 (1954). Certainly, the jury could have concluded that Bisbee's failure to advise the Silvas that their property was worth more than $100,000 was willful and that Bisbee's failure to advise them of her pecuniary interest in the purchaser was also willful. We cannot say in the circumstances of this case that the award of $50,000 punitive damages shocks the conscience of the court.

The issue of whether Midkiff, as a corporation, could be held liable for punitive damages separate and apart from Bisbee was not raised in the court below nor here and consequently is not addressed in this opinion.

Affirmed.

*Gilbert M. Halpern (Rother & Bybee* of counsel) for appellants.

*Ted A. Chihara (Clinton I. Shiraishi* on the brief, *Shiraishi & Yamada* of counsel) for appellees.