LIBERTY BANK, Plaintiff-Appellant, *v.* JAMES W. SHIMOKAWA, Defendant, and ASAE SHIMOKAWA, Defendant-Appellee

NO. 7189

CIVIL NO. 50806

JULY 9, 1981

HAYASHI, C.J., PADGETT AND BURNS, JJ.

## OPINION OF THE COURT BY HAYASHI, C.J.

Liberty Bank appeals from the lower court's decision invalidating the continuing guaranty given it by Appellee Asae Shomokawa and releasing her from liability on a promissory note executed after the execution of the guaranty.

The underlying issues which merit consideration are (1) whether the continuing guaranty as executed by appellee is a valid, enforceable contract of guaranty between the appellee and the bank and (2) whether there was adequate consideration given for subsequent loans made by the appellant-bank to the husband.

For the reasons stated herein, we reverse and find that under the circumstances in this case, the continuing guaranty was valid and enforceable at all times relevant herein.

This action was commenced by the appellant-bank to collect on a promissory note executed by James Shimokawa, ex-husband of the appellee.

James Shimokawa applied for a $10,000.00 loan from appellant in February 1972. Henry Murakami, the bank's loan officer and a friend of James Shimokawa, required him to obtain a continuing guaranty by his wife of his indebtedness to the bank as a condition of the bank's approval of the loan. Murakami gave the form to Shimokawa to obtain his wife's signature. The funds were disbursed to him on February 11, 1972; and the continuing guaranty form was returned, signed by appellee, on February 15, 1972. The space left for the limitation on liability was in blank. Prior to the trial in this action, appellee first denied having signed the guaranty. By the time of trial, however, the parties stipulated that the signature on the continuing guaranty was that of appellee. At trial, she testified she could not recall having signed the form; and if she had signed it, she hadn't intended to sign it, nor did she have knowledge of its content.

Between February 1972 and March 1975, a number of loans were extended to Mr. Shimokawa by Liberty Bank. The parties were divorced in July 1974, but the continuing guaranty was not revoked by the appellee. The appellant sued Mr. Shimokawa on a $15,718.42 note he executed in March 1975 and obtained a default judgment; and when that was not satisfied, this action was brought against appellee. The trial court ruled that the continuing guaranty was invalid at its inception for lack of consideration, and for lack of

communication and mutual assent between Liberty Bank and appellee sufficient to form a contract of guaranty. In its findings of fact the court found that even though appellee had stipulated that the signature on the contract was hers, there was no intent to sign a continuing guaranty of the debts of her husband.

At the outset, we think it is appropriate to address ourselves to the nature of the continuing guaranty contract and the obligations and liabilities arising thereunder with particular attention to the guaranty that is the subject of this action.

The general rule is that the contract of guaranty is an enforceable undertaking or promise on the part of one person which is collateral to a principal obligation, *e.g.*, a promissory note, on the part of another and which binds the guarantor to performance in the event of nonperformance by the principal debtor. 38 AM. JUR. 2d *Guaranty* § 1 (1968); *International Trust Co. v. Suzui*, 31 Haw. 34 (1929). The continuing guaranty is a kind of contract of guaranty that contemplates a future course of dealings between the principal debtor and the creditor over an indefinite period of time. In operation, the continuing guaranty is an offer from the guarantor whose acceptance is manifested by the creditor's performance of a specific act that results in the formation of a contract between the creditor and guarantor. It remains in effect until revoked by the guarantor. 38 AM. JUR. 2d *Guaranty* § 63 (1968). Thus, a continuing guaranty does not guarantee a particular note or obligation, but rather guarantees an overall indebtedness. The continuing guarantor is obliged to pay all the debts of the defaulting principal encompassed by the guaranty whether those debts are secured by other collateral or not (which they can be). *Union Planters National Bank of Memphis v. Markowitz*, 468 F. Supp. § 529 (1979). However, the continuing guaranty contract, even where negotiable instruments are drawn in reliance on it, is not a transaction governed by the provisions of the Uniform Commercial Code. *EAC Credit Corp. v. King*, 507 F.2d 1232 (5th Cir. 1975); *Union Planters Bank of Memphis v. Markowitz, supra.* The present and future extensions of credit to the principal debtor are generally deemed sufficient consideration to support the contract of guaranty. 38 AM. JUR. 2d *Guaranty* § 43 (1968); *Oakland Bank of Commerce v. Washington*, 6 Cal. App. 3d 793, 86 Cal. Rptr. 276 (1970); *see also United States v. Lowell*, 557 F.2d 70 (6th Cir. 1977).

In the case before us, the trial court found that the continuing

guaranty contract was void because (1) the bank had failed to notify appellee of its acceptance of her guaranty, and (2) the bank failed to notify her of the execution of the note on which this action is predicated, as the bank knew or should have known the parties were divorced at the time of its making. However admirable and considerate it would have been to do so, the law does not impose such a requirement under the facts of this case. By the terms of the guaranty, the appellee specifically waived such notice; and we, accordingly, cannot extend this contract beyond its precise and uncontroverted terms. *EAC Credit Corp. v. King, supra; Bank of Naperville v. Halz, supra.*

The court also found that the continuing guaranty contract was void for lack of consideration at its inception because the initial loan funds were disbursed to Mr. Shimokawa on February 11, 1972, and the continuing guaranty bearing appellee's signature as requested by the bank was dated February 15, 1972. The trial court found that on these facts the loan was not made in reliance on the continuing guaranty. Such a finding is inconsistent with the law governing the formation of contracts. Some courts have held that where a contract of guaranty is executed reasonably subsequent to the principal contract with the understanding that the contract of guaranty is the inducement to the execution of the principal contract, no new consideration is required. *United States v. Lowell, supra.* However, as a practical matter, whether the loan of February 11, 1972 was made in reliance on the continuing guaranty returned on the 15th is irrelevant to the question of whether the continuing guaranty was sufficient consideration for the March 1975 loan which is the subject matter of this action. *See* 38 AM. JUR. 2d *Guaranty* § 43, *supra.*

Appellant ascribes error to the court's finding that appellee, having admitted to signing the guaranty, lacked the intent to do so. Appellee testified that she did not remember ever signing the document in question; but that since her signature was there, she thought she was signing a loan document instead of a continuing guaranty. She said if she had signed it, she certainly would have revoked the guaranty when the parties were divorced in 1974. However, lapse of memory is not a valid basis on which to disprove intent sufficient to invalidate a contract. *See Bank of Santa Ana v. Molina,* 1 Cal. App. 3d 607, 81 Cal. Rptr. 885 (1969). Moreover, it is a fundamental rule of contract law that a competent party who signs a

written instrument is bound by its terms; and in the absence of allegations of mistake, fraud, or duress, a failure to read or understand the contents of the instrument cannot relieve the signing party of the obligation imposed therein. *Hayes v. Travelers Insurance Co.*, 93 F.2d 568 (1937); *In Re Adoption of Baby Girl K*, 26 Wash. App. 897, 615 P.2d 1310 (1980); *Squires v. Woodbury*, 621 P.2d 443 (Kan. App. 1980); *Markell v. Sidney B. Pfeifer Foundation*, 402 N.E.2d 76 (Mass. App. Ct. 1980).

The appellant also ascribes error to the trial court's conclusion of law that the absence of a limit on liability invalidated the contract. The failure of the appellee to limit her liability is, likewise, an insufficient basis to invalidate the contract. There is considerable authority for the view that the absence of a limit on liability in a continuing guaranty is not, standing alone, a sufficient basis to invalidate the entire contract of continuing guaranty where the guarantor has the power to set the limit on liability. *See e.g. American Petrofina Co. of Texas v. Bryan*, 519 S.W.2d 488 (Tex. Cr. App. 1975), wherein the continuing guaranty failed to specify an upper limit on the liability of the guarantor. The court stated:

> Assuming that there were blanks when the instrument was signed, no evidence was offered that the body of the instrument was filled in incorrectly, fraudulently or contrary to the understanding of the two Bryans. The authority to fill in the blanks was entrusted to the agents of the Appellant, and the instrument is as good as if executed in complete form.

*American Petrofina Co. of Texas v. Bryan, supra,* at 488.

While this failure to supply a limit on liability is a major source of contention for the parties because of the appellant's responsibility to supply the limit and her apparent failure to carefully read a document to which she affixed her signature and the bank's error in overlooking the omission, we think neither is a sufficient basis to invalidate the entire contract. WILLISTON ON CONTRACTS, 3d. Ed. §§ 35 and 90A; *see also North Carolina National Bank v. Corbett*, 271 N.C. 458, 156 S.E.2d 835 (1967).

Because we are reversing the trial court's judgment, it is not necessary to address the other issues raised by the appellant.

Accordingly, the judgment is reversed.

*Neil F. Hulbert (Hong* and *Iwai* of counsel) for plaintiff-appellant.
*Eichi Oki* for defendant-appellee.