HONOLULU FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff-Appellee, *v.* THOMAS H. MURPHY and GRANT E. MARSH, Defendants-Appellants, and JOHN DOES 1-20, MARY DOES 1-20, DOE CORPORATIONS 1-20, DOE PARTNERSHIPS 1-20, DOE ASSOCIATIONS 1-20, DOE GOVERNMENTAL AGENCIES 1-20, and OTHER DOE ENTITIES 1-20, Defendants

NO. 11921

(CIVIL NO. 85-4754)

FEBRUARY 12, 1988

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

In an action involving the collection on a promissory note and the enforcement of a guaranty for the repayment of the note, defendant Grant E. Marsh (Marsh), the guarantor, appeals the

summary judgment in favor of plaintiff Honolulu Federal Savings and Loan Association (Honfed), the payee on the note. Since there are genuine issues of material fact regarding a defense raised by Marsh, we hold that the lower court improperly granted the summary judgment. We therefore vacate the judgment and remand the case for further proceedings.

## I. FACTS

On September 28, 1984, defendant Thomas H. Murphy (Murphy) signed a promissory note for a $400,000 personal loan from Honfed. The note was secured by a pledge of 5,700 shares of stock of M.S.M. & Associates, Inc. (MSM) and a third mortgage covering real property in Colorado. Murphy was the president of MSM. The note required Murphy to pay interest only each month from November 20, 1984, $16,666.67 plus interest per month from October 20, 1985, and the principal balance and interest in full on September 28, 1986. On October 3, 1984, Marsh signed a guaranty agreement (Guaranty) for the repayment of Murphy's note. Murphy defaulted on the note and Honfed filed a complaint for collection against Murphy and Marsh on December 19, 1985. The foregoing facts are not in dispute.

Murphy answered the complaint and counterclaimed, alleging that Honfed's breach of an agreement to loan MSM $30 million[1] that was to be used for the development of the Ewa Marina Community Project,[2] rendered Murphy incapable of repaying his $400,000 loan and caused him, *inter alia,* "severe and substantial mental anguish and emotional distress." Record, Vol. 1 at 22.

Marsh answered the complaint and cross-claimed, seeking a judgment against Murphy if Honfed was entitled to a judgment

---

[1] Honolulu Federal Savings and Loan Association (Honfed) loaned M.S.M. & Associates, Inc. (MSM) $7,500,000. MSM subsequently defaulted on the loan. Whether Honfed agreed to loan a total of $30 million to MSM is the subject of the dispute in First Circuit Court Civil No. 86-3087, *Honolulu Federal Savings and Loan Association v. M.S.M. & Associates, Inc.,* presently under appeal in No. 12397.

[2] Grant E. Marsh (Marsh) purchased 40,000 shares of stock of MSM at $65 per share in 1983, and became a director of MSM. As part of the agreement, MSM entered into a development contract with Turnmar Development Company, of which Marsh was the president.

against Marsh. The answer also alleged Honfed's agreement to loan $30 million to MSM which Honfed had breached.

Honfed's motion for partial summary judgment[3] against Murphy and Marsh was granted on October 1, 1986. After the lower court denied Marsh's motion for reconsideration and certified the summary judgment as to its finality under Hawaii Rules of Civil Procedure (HRCP) Rule 54(b), Marsh timely appealed.[4]

Marsh contends on appeal that the granting of summary judgment was error because there are genuine issues of material fact[5] regarding the following affirmative defenses he had raised:

1. Honfed had fraudulently induced him to sign the Guaranty by its representation to loan $30 million to MSM;

2. Honfed had fraudulently induced him to sign the Guaranty by its representation that it would seek to recover on the collateral securing Murphy's loan first before proceeding on the Guaranty;

3. Honfed had modified the Guaranty by agreeing to conclude foreclosure on the third mortgage security before proceeding against Marsh; and

4. Honfed had impaired the value of the pledged MSM stock by breaching its agreement to loan $30 million to MSM, thereby discharging Marsh in whole or in part from performing under the Guaranty.

We hold that there were no genuine issues of material fact and Honfed was entitled to a judgment as a matter of law as to defenses 1, 2, and 4, but there were genuine issues of material fact regarding defense 3. We will discuss each of these defenses in order.

---

[3] Honfed moved for partial summary judgment on all claims and the counterclaim between Honfed and Thomas H. Murphy (Murphy) and Marsh. The motion did not involve Marsh's cross-claim against Murphy.

[4] Murphy filed a *pro se* "Joinder in Appeal." Not having filed any briefs, however, he is deemed to have abandoned his appeal.

[5] Under Hawaii Rules of Civil Procedure (HRCP) Rule 56(c), a summary judgment will be sustained if the record discloses that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Also, "the evidence in the record and the inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party." *Soukop v. Snyder,* 6 Haw. App. ___, ___, 709 P.2d 109, 112 (1985). *See also Fernandes v. Tenbruggencate,* 65 Haw. 226, 228, 649 P.2d 1144, 1147 (1982).

## II. FRAUDULENT INDUCEMENT — THE MSM LOAN

Marsh initially claims that as indicated in the affidavits in the record, on March 23, 1984, Honfed orally agreed to loan $30 million to MSM, of which he had knowledge because he was a director of MSM. Marsh argues that Honfed made this loan commitment when it "did not have the resources to fund such a loan," and therefore "Honfed either made a representation that it knew was false or made a representation without knowledge whether the representation was true or false[.]" Consequently, Marsh concludes that Honfed's representation which he relied on in signing the Guaranty was fraud in the inducement, and the Guaranty is void.

Marsh contends that there are genuine issues of material fact regarding this defense and Honfed was not entitled to a summary judgment as a matter of law. We do not agree.

### A.

Honfed's response is that since the Guaranty is an unambiguous, integrated written instrument, the parol evidence rule precludes Marsh from using extrinsic evidence to contradict, defeat, or modify its meaning or legal effect.

The general rule is as stated by Honfed. Where a written contract of guaranty "is complete and not uncertain or ambiguous, the writing will be presumed to contain the entire agreement, and parol or extrinsic evidence is inadmissible to vary the terms of the written instrument." 38 Am. Jur. 2d *Guaranty* § 124 at 1130 (1968). The rule has been "justified on the basis of reliance by the parties on the written document, and that to remove this reliance would destroy the confidence on which modern business has been built." *Id.* at 1131. *See also Akamine & Sons, Ltd. v. American Sec. Bank*, 50 Haw. 304, 309, 440 P.2d 262, 266 (1968).

However, where it appears that a written agreement has been "conceived in fraud[,]" the parol evidence rule is inapplicable. *Cosmopolitan Fin. Corp. v. Runnels*, 2 Haw. App. 33, 40, 625 P.2d 390, 396 (1981). Parol or extrinsic evidence is admissible "to show that execution of the guaranty was procured by fraud[.]" 38 Am. Jur. 2d *Guaranty* § 124 at 1132.

Here, Marsh claims that he was fraudulently induced to sign the Guaranty. Consequently, he is not barred from the use of parol or extrinsic evidence to prove this defense.

We next consider the elements of fraud in the inducement.

## B.

"Fraud in the inducement[6] is fraud which 'induces the transaction by misrepresentation of motivating factors[.]' " *Adair v. Hustace,* 64 Haw. 314, 320 n.4, 640 P.2d 294, 299 n.4 (1982) (quoting H. Dobbs, *Remedies* § 9.6 at 645 (1973)) (footnote added). We have stated:

> To constitute fraudulent inducement sufficient to invalidate the terms of a contract, there must be (1) a representation of a material fact, (2) made for the purpose of inducing the other party to act, (3) known to be false but reasonably believed true by the other party, and (4) upon which the other party relies and acts to [his] damage.

*Dement v. Atkins & Ash,* 2 Haw. App. 324, 327, 631 P.2d 606, 608 (1982) (citation omitted). *See also Kang v. Harrington,* 59 Haw. 652, 587 P.2d 285 (1978); *Wolfer v. Mutual Life Ins. Co. of New York,* 3 Haw. App. 65, 641 P.2d 1349 (1982) (alleged fraud in procuring guarantees).

The false representation, to be actionable, must relate to a past or existing material fact, and not "to the happening of future events[.]" *Stahl v. Balsara,* 60 Haw. 144, 149, 587 P.2d 1210, 1214 (1978). *See also Spudnuts, Inc. v. Lane,* 131 Ariz. 424, 426, 641 P.2d 912, 914 (Ct. App. 1982). Generally, "fraud cannot be predicated upon statements which are promissory in their nature at the time they are made and which relate to future actions or conduct." 37 Am. Jur. 2d *Fraud and Deceit,* § 60 at 92 (1968). A promise relating

---

[6] Two other forms of fraud are "fraud in the factum" and "constructive fraud." "Fraud in the factum is fraud which goes to the nature of the document itself." *Adair v. Hustace,* 64 Haw. 314, 320 n.4, 640 P.2d 294, 299 n.4 (1982) (citing H. Dobbs, *Remedies* § 9.6 at 646 (1973)). Constructive fraud is characterized by the breach of fiduciary or confidential relationship. *Silva v. Bisbee,* 2 Haw. App. 188, 190, 628 P.2d 214, 216 (1981).

to future action or conduct will be actionable, however, if the promise was made "without the present intent to fulfill the promise[.]" *Eastern Star, Inc. v. Union Bldg. Materials Corp.*, 6 Haw. App. ___, ___, 712 P.2d 1148, 1159 (1985). *See also* 37 Am. Jur. 2d *Fraud and Deceit*, § 68 (1968). Moreover, the standard of proving fraud with respect to written contracts is extremely high, and a written contract will be cancelled only in a clear case of fraud supported by clear and convincing evidence. *Kang v. Harrington*, 59 Haw. at 656-57, 587 P.2d at 289; *Dement v. Atkins & Ash*, 2 Haw. App. at 327, 631 P.2d at 608.

## C.

We apply the foregoing precepts to Marsh's first defense. Initially, we find that the record reveals that the alleged representation to loan $30 million was made by Honfed to MSM. There is nothing in the record showing that the representation was made by Honfed for the purpose of inducing Marsh, in his personal capacity, to sign the Guaranty to secure a note evidencing a personal loan to Murphy. An element of fraudulent inducement is that a representation of a material fact must be made *for the purpose of inducing* the other party to act. The lack of this element is fatal to Marsh's defense.

More seriously, Marsh contends that at the time Honfed made the representation to loan $30 million to MSM, it had no intention of fulfilling the promise because it "did not have the resources to fund such a loan[.]" However, there is nothing in the record to support this contention. Marsh relies on two letters dated June 15, 1985 and July 7, 1985, respectively, signed by two different officers of Honfed, which in substance stated that Honfed did not have the resources to fund MSM's Ewa Marina project.[7] That evidence merely illustrates Honfed's inability to loan $30 million to MSM about 15 months after Honfed's alleged promise made on March

---

[7] In opposing the motion for summary judgment, Marsh also submitted an article from the February 18, 1985 issue of the Pacific Business News relating to the "top-level management shake-up" of Honfed. The lower court could not consider this evidence since it was hearsay which would not be admissible at trial. *See Wolfer v. Mutual Life Ins. Co. of New York*, 3 Haw. App. 65, 68, 641 P.2d 1349, 1352 (1982).

23, 1984.[8] At best, the evidence may support a claim for breach of contract, but not for fraud. As stated in a treatise on torts:

> Unless the present state of mind is misstated, there is of course no misrepresentation. When a promise is made in good faith, with the expectation of carrying it out, the fact that it subsequently is broken gives rise to no cause of action, either for deceit, or for equitable relief. Otherwise any breach of contract would call for such remedy. The mere breach of a promise is never enough in itself to establish the fraudulent intent.

W. Keeton, *Prosser and Keeton on the Law of Torts* § 109 at 764 (5th ed. 1984) (footnotes omitted). *See also Robinson v. Perpetual Services Corp.,* 412 N.W.2d 562 (Iowa 1987).

There must be some affirmative evidence that Honfed possessed fraudulent intent. *Aloha Petroglyph, Inc. v. Thomas,* 1 Haw. App. 353, 354, 619 P.2d 518, 519 (1980). There is none in the record.

Accordingly, there was no genuine issue of material fact regarding Marsh's first defense and Honfed was entitled to a summary judgment as a matter of law.

### III. FRAUDULENT INDUCEMENT — FORBEARANCE ON THE GUARANTY

In his second defense, Marsh alleges that Honfed fraudulently induced him to sign the Guaranty by promising to complete foreclosure on the collateral securing Murphy's $400,000 note before looking to Marsh under the Guaranty. Marsh argues that since there were genuine issues of material fact regarding this defense, the granting of summary judgment was error. We disagree.

As stated above, a representation that is promissory in its nature may be actionable as fraud only if made without the present intent

---

[8] In his reply brief, Marsh appended, *inter alia,* a copy of the minutes of Honfed loan committee meeting held on March 22, 1984, and a copy of the deposition of Honfed Vice President Albert Ho taken on March 26, 1987, in a related case (*see* note 1, *supra*), to support his first defense. Since the document and deposition were not part of the record that the lower court considered in determining the motion for summary judgment, we may not consider them on appeal. *Munoz v. Yuen,* 66 Haw. 603, 605-06, 670 P.2d 825, 827 (1983).

to perform. As we also stated above, there must be some affirmative evidence of fraudulent intent.

The record, viewed in the light most favorable to Marsh, is devoid of any evidence of Honfed's fraudulent intent not to perform its alleged promise to forbear on the Guaranty pending the foreclosure on Murphy's collateral securing the $400,000 note. Absent such intent, we must hold that "[b]ecause the bank's [alleged] representations as to how it intended to go about collecting the note in the event of default were promises as to future acts, they were insufficient as a matter of law to constitute fraud in the procurement of the guaranty." *Rogers v. C. & S. Nat'l Bank,* 156 Ga. App. 330, 330, 274 S.E.2d 722, 723 (1980).

Consequently, the lower court properly granted a summary judgment to Honfed on Marsh's second defense.

## IV. MODIFICATION OF THE GUARANTY

Marsh's third defense is based on his alleged claim that in January or February of 1986, after Honfed had commenced this action, William M. Borthwick, Jr. (Borthwick), Honfed's President and Chief Executive Officer, agreed to Marsh's request "that Honfed [would] first proceed and conclude proceedings against the mortgage Honfed had in Murphy's house in Colorado . . . before looking to Marsh to pay any amounts owing under the Murphy loan." In other words, Marsh argues that the unconditional Guaranty had been modified. Based on our review of the record, we hold that there were genuine issues of material fact involving this defense.

A written contract can subsequently be orally modified if all of the requisites of a valid or enforceable agreement are met.[9] *Lo v.*

---

[9] We note that the alleged oral agreement to modify the Guaranty may be in violation of the Statute of Frauds which requires an agreement "[t]o charge any person upon any special promise to answer for the debt, default, or misdoings of another" to be in writing. Hawaii Revised Statutes (HRS) § 656-1(2) (1985). *See also James D. Swoish, Inc. v. Panda Foods, Inc.,* 2 Haw. App. 679, 639 P.2d 426 (1982). However, since in challenging Marsh's modification of agreement defense in the lower court and on appeal, Honfed did not rely on the Statute of Frauds, which must be affirmatively asserted under HRCP Rule 8(c), we need not address its applicability.

*First Trust Co. of Hilo,* 25 Haw. 185, 187-88 (1919). *See also* 17 Am. Jur. 2d *Contracts* § 465 (1964). A requisite is that the modification must be supported by new consideration. *Brand S Corp. v. King,* 102 Idaho 731, 639 P.2d 429 (1981); *Boardman v. Dorsett,* 38 Wash. App. 338, 685 P.2d 615 (1984).

Marsh asserts that the consideration for the oral modification was that "certain information regarding the Colorado house" which Borthwick had requested and which Marsh had provided. Honfed argues that since Marsh's affidavit establishes that the undisclosed information about the Colorado house was requested and furnished *after* Borthwick had agreed to Honfed's forbearance against Marsh,[10] the modification agreement was without consideration. The affidavit states, however, that Borthwick's request and Marsh's agreement to furnish the information were made "[d]uring the same conversation[.]" Viewing the statement in the light most favorable to Marsh, we must conclude that Honfed's agreement to forbear and Marsh's agreement to provide the information were mutual reciprocal promises, which constitute good and sufficient consideration for a valid contract. *Guaschino v. Eucalyptus, Inc.,* 3 Haw. App. 632, 642, 658 P.2d 888, 895-96 (1983).

Honfed submitted documentary evidence below to show that (1) Honfed, through its Colorado counsel, had submitted a "Notice of Intention to Redeem to the Public Trustee for the County of Douglas, State of Colorado," dated October 30, 1985, in the Colorado foreclosure proceeding involving Murphy's Colorado home and (2) it had obtained an appraisal report of the Colorado property in December 1985. Honfed argued to the lower court that it

---

[10] In the affidavit filed on August 28, 1986, Marsh states in paragraph 15:

15. In January or February 1986, during a telephone conversation I had with William M. Borthwick, Jr., President and Chief Executive Officer of HONFED, I requested, and Mr. Borthwick agreed, that HONFED would first proceed and conclude proceedings against the Colorado house before looking to me to pay HONFED any amounts owing under the Murphy Loan. During the same conversation, after Borthwick agreed that HONFED would first proceed and conclude proceedings against the Colorado house before looking to me to pay HONFED any amounts owing under the Murphy Loan, Mr. Borthwick asked me to obtain certain information regarding the Colorado house. I agreed to and did provide Mr. Borthwick with the requested information.

Record, Vol. 2 at 21.

could not "imagine what additional information it could have desired from Marsh that would have served as consideration for forbearance in enforcing the guaranty." Record, Vol. 2 at 191. Honfed's argument, however, goes to the credibility of Marsh's assertion; and it was not for the court to make this factual determination based on affidavits and documents appended thereto.

In our view there were genuine issues of material fact regarding the modification defense. Such factual issues as to what information, if any, Borthwick requested from Marsh and what Marsh agreed to do and actually did remain to be determined. Thus, Honfed was not entitled to summary judgment on this defense.

## V. IMPAIRMENT OF VALUE OF COLLATERAL

The last defense is that Honfed's breach of the alleged agreement to loan MSM $30 million destroyed or substantially impaired the value of the 5,700 shares of MSM stock which Murphy had pledged as collateral for the $400,000 loan, "thereby discharging Marsh in whole or in part from performing under the Guaranty." Marsh argues that there are genuine issues of material fact concerning this defense to preclude the granting of summary judgment. We hold that Honfed was entitled to a judgment as a matter of law on this defense.

### A.

In asserting this defense, Marsh relies on Hawaii Revised Statutes (HRS) § 490:3-606(1) (b) (1985)[11] which reads:

Impairment of recourse or of collateral. (1) The holder discharges any party to the instrument to the extent that without such party's consent the holder

\* \* \*

(b) Unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

---

[11] Hawaii Revised Statutes Chapter 490 (1985) is Hawaii's Uniform Commercial Code.

Marsh claims that the defense under this section is "available to any party who is in the position of a surety," § 490:3-606 Comment 1, and the term "surety" includes a guarantor. HRS § 490:1-201(40) (1985).

However, the term "instrument" in § 490:3-606 means "a negotiable instrument." HRS § 490:3-102(1) (e) (1985). A guaranty agreement is not a negotiable instrument under the Uniform Commercial Code (UCC). *Gregoire v. Lowndes Bank,* 342 S.E.2d 264, 266 (W. Va. 1986) (analyzing the requirements of a negotiable instrument under UCC § 3-104(1)). *Cf. Liberty Bank v. Shimokawa,* 2 Haw. App. 280, 282, 632 P.2d 289, 291-92 (1981) (continuing guaranty contract is not governed by the UCC). Since Marsh was not a signatory to the $400,000 note but signed a separate Guaranty, there is a question as to whether he is a "party to the instrument" and whether the § 490-3-606 defense is available to him.

Although the note does not bear Marsh's signature, it provides in part as follows:

> *Guaranty.* The due and punctual payment of this Note and the full performance of its provisions are unconditionally guaranteed by that certain Guaranty executed concurrently herewith by Grant Marsh, dba Turnmar Development Company.

Record, Vol. 2 at 11. We therefore hold that the express reference in the note to the Guaranty makes Marsh a "party to the instrument," the note, under HRS § 490:3-606(1) (b) and a beneficiary of the defense thereunder.

### B.

We must now determine what "unjustifiable impairment" of a collateral means under HRS § 490:3-606(1) (b) as applied to this case.

Recently, we held that:

HRS § 490:3-606(1)(b) imposes essentially the same duties on secured holders in possession of the collateral as HRS § 490:9-207 imposes on secured parties in possession of the collateral.

208

208

Commercial Fin., Ltd. v. American Resources, Ltd.,* 6 Haw. App. ____,
____, 737 P.2d 1120, 1128 (1987) (footnote omitted). We also
stated:

> In our view, there is no unjustifiable impairment unless there is
> a duty, a breach of that duty, and consequential damages. The
> question of whether a duty exists is a question of law.

*Id.*

In determining what the duties of a secured holder in posses-
sion of collateral are, we turn to HRS § 490:9-207(1) (1985) which
provides:

> A secured party must use reasonable care in the custody and
> preservation of collateral in his possession. In the case of an
> instrument or chattel paper reasonable care includes taking
> necessary steps to preserve rights against prior parties unless
> otherwise agreed.

Comment 1 to HRS § 490:9-207 states in part:

> Subsection (1) states the duty to preserve collateral imposed
> on a pledgee at common law. *See* Restatement of Security, §§ 17,
> 18.

Section 17 of the Restatement of Security (1941) provides that a
"pledgee owes to the pledgor the duty of reasonable care of the
pledged chattel[,]" and Comment a thereto states in part as follows:

> The rule of reasonable care expressed in this Section is con-
> fined to the *physical care* of the chattel, whether an object such as
> a horse or piece of jewelry or a negotiable instrument or docu-
> ment of title. [Emphasis added.]

Section 18 of the Restatement imposes on the pledgee "the duty of
using reasonable diligence to preserve and collect the claims"
where the pledged instruments represent claims of the pledgor
against third parties, and Comment a thereto states in part as fol-
lows:

> The pledgee is not liable for a decline in the value of pledged
> instruments, even if timely action could have prevented such
> decline.

Case law construing UCC § 9-207(1) applies sections 17 and 18
of the Restatement of Security. In *Federal Deposit Ins. Corp. v. Air
Atlantic, Inc.,* 389 Mass. 950, 957, 452 N.E.2d 1143, 1147 (1983),
the Massachusetts Supreme Judicial Court held that "the duty of

reasonable care imposed by § 9-207(1) is confined to the physical care of the collateral." A Florida court concluded that under § 9-207(1) "a pledgee is not liable for a decline in the value of pledged instruments." *Tepper v. Chase Manhattan Bank,* 376 So. 2d 35, 36 (Fla. Dist. Ct. App. 1979). *See also New Jersey Bank v. Toffler,* 139 N.J. Super. 161, 166, 353 A.2d 116, 118 (1976).

Based on the foregoing authorities, in our view, Honfed had no duty to maintain or preserve the value of the 5,700 shares of MSM stock pledged by Murphy as collateral by loaning $30 million to MSM. Assuming there was a $30 million loan commitment agreement between MSM and Honfed which the latter breached, that is a matter between MSM and Honfed and has no bearing on Honfed's duty as a pledgee. Therefore, Honfed was entitled to a judgment as a matter of law regarding this defense.

## VI. ATTORNEYS' FEES, COSTS, AND EXPENSES

Marsh also contends that the lower court abused its discretion in awarding Honfed $66,436.89 in attorneys' fees, costs, and expenses.

Inasmuch as the summary judgment in favor of Honfed is being vacated and Honfed is not the prevailing party, we vacate the order awarding attorneys' fees, costs, and expenses.

## VII. CONCLUSIONS

Although Honfed was entitled to judgment as a matter of law on Marsh's defenses of (1) fraudulent inducement by the alleged agreement by Honfed to loan $30 million to MSM, (2) fraudulent inducement regarding forbearance on the Guaranty, and (3) impairment of value of the collateral for the loan, there were genuine issues of material fact regarding Marsh's defense that the Guaranty was allegedly modified and Honfed was not entitled to a judgment as a matter of law on this defense. Therefore, the lower court improperly granted Honfed a summary judgment as to Marsh.

Accordingly, we vacate (1) the judgment in favor of Honfed and against Marsh and (2) the order awarding to Honfed attorneys'

fees, costs, and expenses, and remand the case for further proceedings consistent with this opinion.

*James M. Sattler (Frederick W. Rohlfing III* with him on the briefs) for defendant-appellant Grant E. Marsh.

*Susan Oki Mollway (Stanley K.W. Chong* with her on the brief, *Cades Schutte Fleming & Wright,* of counsel) for plaintiff-appellee.