COMMERCIAL FINANCE, LIMITED, Plaintiff-Appellant, *v.* AMERICAN RESOURCES, LIMITED, CLIFFORD N. GAMBLE, MICHAEL F. McCARTHY, and CARL J. BERNHARDT, Defendants-Appellees, and HAWAIIAN LIFE INSURANCE CO., LTD., FARWENT FEDERAL SAVINGS AND LOAN ASSOCIATION, TRUSTEES OF THE EMPLOYEES' PROFIT SHARING PLAN AND TRUST OF HONOLULU FEDERAL SAVINGS AND LOAN ASSOCIATION, MANOA SHOPPING CENTER, INC., VALLEY MARKETPLACE-PARTNERS, and GEORGE FREITAS, Director of Taxation of the State of Hawaii, Defendants, and PACIFIC LOAN, INC., a Hawaii corporation, Intervenor-Defendant-Appellee

NO. 11522

(CIVIL NO. 71593)

MAY 26, 1987

BURNS, C.J., HEEN AND CIRCUIT JUDGE MOON IN PLACE OF ASSOCIATE JUDGE TANAKA, DISQUALIFIED

OPINION OF THE COURT BY BURNS, C.J.

On June 18, 1984 the lower court entered a judgment upon the jury's special verdict in favor of defendants American Resources, Limited (AR), Michael F. McCarthy, Carl J. Bernhardt, and Clifford N. Gamble, Sr. On October 15, 1984 the lower court denied the motion for new trial filed by plaintiff Commercial Finance, Limited (CF), and ordered

CF to pay attorney fees in excess of 40 percent of the amount claimed by CF and costs to AR, McCarthy, Bernhardt, and Gamble. CF appealed.

On July 24, 1986 we severed CF's appeal into two completely separate and independent cases. This appeal, No. 11522, involves all appellees other than AR. The other appeal, No. 10263, involves only appellee AR and cannot be decided because of a stay emanating from Case 85 00325 in the United States Bankruptcy Court for the District of Hawaii in which AR is the debtor.

As to all appellees other than AR, we vacate the June 18, 1984 judgment and the two October 15, 1984 orders ordering CF to pay attorney fees and costs and reverse the October 15, 1984 order denying CF's motion for new trial.

On August 6, 1981 AR executed a $200,000 promissory note (note) in favor of CF. The note, which is a negotiable instrument under Hawaii Revised Statutes (HRS) § 490:3-104 (1985), required AR to pay interest monthly and then to pay the entire balance due at the end of one year.

The note was secured by a Mortgage, Security Agreement and Financing Statement covering AR's ten-year leasehold interest in office space in the Manoa Marketplace (office lease) and by a security agreement covering AR's furniture, office equipment, oriental rugs, and paintings (personal property) therein. Gamble, McCarthy, and Bernhardt (accommodation indorsers) were accommodation indorsers on the note. AR's stock is owned 40 percent by McCarthy and 60 percent by Bernhardt. Bernhardt is AR's president. AR is a holding company.[1] AR defaulted on the interest payments from and after the payment due in January 1982. AR defaulted on the office lease payments from and after

---

[1] AR either directly or indirectly owns, controls, or holds with power to vote securities in the following corporations:

CJB Holdings, Inc.
Development, Inc.
Eagle River Development Co., Inc.
Hawaii-Alaska Development Corp.
Hawaii-Alaska Land & Cattle Co.
The Norfolk Group, Ltd.
Norfolk Investment Co., Ltd.
Norfolk Utilities and Development, Inc.
O.R., Ltd.
American Sunrise, Ltd.
San Pedro Packers, Inc.

the payment due in April 1982.

On October 22, 1981 Pacific Loan (PL) filed Civil 67851 against AR, McCarthy, Bernhardt, and others for damages in excess of $6,000,000. On May 12, 1982, pursuant to HRS § 651-2 (1985),[2] PL obtained a prejudgment writ of attachment of AR's personal property and had it seized and stored in a warehouse. CF immediately contacted PL. Though PL recognized CF's priority, it refused to return the personal property to AR.

On June 4, 1982 CF filed the instant case (Civil 71593) against AR, the accommodation indorsers, and other interested parties for judgment on the note and foreclosure of the leasehold interest. CF did not seek foreclosure of the personal property.

By letter dated June 25, 1982, AR's lessor informed CF that AR was not paying the required monthly office lease payments. CF sent the letter to Gamble. Gamble advised CF that CF was legally obligated to protect the collateral.

In June or July of 1982, McCarthy attempted to sublease the office space, but CF refused to consent.[3]

On July 7, 1982 Gamble counterclaimed, alleging that (1) CF participated in the seizure by PL because Teruo Himoto, CF's president, was

---

[2]Hawaii Revised Statutes (HRS) § 651-2 (1985) provides:

Writ; issued when. The plaintiff, in any action upon a contract, express or implied, may, at the time of commencing the action, or at any time afterward before judgment, have the property of the defendant, or that of any one or more of several defendants, which is not exempt from execution, attached in the manner hereinafter prescribed, as security for the satisfaction of such judgment as the plaintiff may recover, but no writ of attachment shall be issued (1) against the State, or any political municipal corporation, or subdivision thereof, or (2) in circumstances where garnishment is authorized under chapter 652.

[3]The August 6, 1981 Mortgage, Security Agreement and Financing Statement provides in relevant part as follows:

(13) That if any of the property subject to this mortgage shall be conveyed or assigned by the Mortgagor to any other party, then, unless the Mortgagee shall in writing consent to the same or accept the written undertaking of the purchaser to assume and discharge all obligations of this mortgage, all of the indebtedness hereby secured shall at once become due and payable at the option of the Mortgagee (any provision or terms thereof to the contrary notwithstanding), and delay or failure on the part of the Mortgagee to demand such payment shall not prejudice the rights of the Mortgagee thereto;

(14) That as additional security hereunder, the Mortgagor hereby assigns to the Mortgagee the rents of the mortgaged property, provided that the Mortgagor shall, prior to acceleration upon default of this mortage or other causes as hereinafter

on the board of directors of PL's parent corporation, Thrift Guaranty Corporation, and the seizure impaired the collateral, and (2) CF's actions constituted a breach of its contractual obligations to Gamble.

On August 15, 1983 CF's motion as intervenor in Civil 67851 to quash PL's attachment was granted. The order stated in relevant part as follows:

> 6. That Pacific Loan, Inc. return and deliver all of the said personal properties to the offices of American Resources, Limited at Manoa Marketplace at the cost of Pacific Loan, Inc., being the same offices whereat the said personal properties were executed upon pursuant to the said Writ of Attachment.

However, PL continued to possess the personal property.

By the time of trial in May 1984, AR's leasehold interest was worthless because the delinquent lease rent exceeded the value of the leasehold.

The trial judge instructed the jury in relevant part as follows:

> The lender is not required to pursue the collateral before filing a lawsuit against borrower or any endorsers of a promissory note.

* * *

> Plaintiff Commercial Finance Limited is a secured creditor. A secured creditor has a duty to always act in good faith.
>
> The requirement that a secured creditor must always act in a commercially reasonable manner is a fundamental right of a debtor and can not be varied or waived.

* * *

> The paintings and office furniture are what is called personal

---

provided, have the right to collect and retain such rents as they become due and payable; that upon acceleration as aforesaid, the Mortgagee, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the mortgaged property herein described and to collect the rents of such property including those past due; that all rents collected by the Mortgagee shall be applied first to the payment of the costs of management of said property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this mortgage; and that the Mortgagee and receiver shall be liable only for those rents actually received.

property, and the obligation and rights of Commercial Finance, Clifford Gamble, Michael McCarthy and Carl Bernhardt with respect to the personal property is governed by the Uniform Commercial Code.

The lease at Manoa Market Place is considered to be real property, and the Uniform Commercial Code does not apply to real property. As a result, the rights and duties of Commercial Finance, Clifford Gamble, Michael McCarthy and Carl Bernhardt concerning the leasehold and the mortgage are governed by rules of law which the courts have developed over the years.

\* \* \*

Because an endorser on the note is a surety, the endorsers have a right to insist that the collateral which forms the security for the note be protected by the creditor. This is so because the endorsers have a right to also look to the collateral in the event they have to pay the note.

Since Clifford Gamble, Michael McCarthy and Carl Bernhardt are endorsers, and therefore are sureties and not makers on the note, they are released from liability on the note by any act or failure to act of Commercial Finance which deprives them as the endorsers of the value of the collateral.

The undisputed evidence is that in May 1982, Pacific Loan, seized the personal property which was part of the collateral of Commercial Finance for the repayment of the loan, because Pacific Loan posted a bond and obtained a Writ of Attachment from the Court, I instruct you that as a matter of law, American Resources Limited did not have a legal right to force Pacific Loan to return the collateral.

Therefore, I instruct you that because American Resources could not force Pacific Loan to return the collateral, American Resources bears no responsibility for the delay in getting the property back from Pacific loan [sic].

\* \* \*

As between American Resources and Commercial Finance, Commercial Finance was the only party with the legal right to get the collateral back from Pacific Loan.

It was Commercial Finance's obligation to do so, if Commercial

Finance intended to hold the endorsers responsible for the loan.

\* \* \*

I instruct you that as a matter of law a secured creditor is deemed to have possession of the collateral when he has the ability or power to have the collateral returned to the possession of the debtor but fails or refuses to have the collateral returned.

Because only Commercial Finance had the legal right to obtain possession of the personal property, collateral seized by Pacific Loan as between Commercial Finance and the defendants, Commercial Finance is deemed to have possession.

Someone who bears a legal right to have posssession of personal property may be considered for some purposes to have legal possession, even though someone else may have actual possession and control. This legal concept is known as constructive possession.

Plaintiff Commercial Finance Limited can not [sic] deprive American Resources Limited and Michael F. McCarthy, Carl J. Bernhardt and Clifford N. Gamble, Senior, of the possession and use of the collateral in question for an unreasonable length of time, and not apply the assets and proceeds from its sale toward liquidation of the debt.

\* \* \*

When a default occurs on a note, a secured party in actual or constructive possession of collateral must either retain the collateral in satisfaction of the debt, proceed in a commercially reasonable manner to dispose of the collateral, or else return it to the debtor.

The continuation of actual or constructive possession of collateral for an unreasonable time constitutes an election by the secured creditors to retain the collateral in satisfaction of the obligation.

If you find that plaintiff Commercial Finance Limited has retained the collateral for an unreasonable time, you must find that Commercial Finance has accepted the collateral in total satisfaction of the debt owed on the loan, and find that the loan has been satisfied and paid off, and therefore the defendants are not liable.

If you find that Commercial Finance attempted to get the personal property collateral back from Pacific Loan but that Commercial Finance was negligent in the way it did so, then the three

endorsers are discharged to the extent of any loss caused by Commercial Finanace's negligence for the benefit of of [sic] the sureties, Clifford Gamble, Michael McCarthy, and Carl Bernhardt.

Commercial Finance was required to either foreclose on the lease within a reasonable period of time or release its lien on the lease to allow it to be disposed of, provided that the proceeds of such disposition would go to Commercial Finance.

If you find that Commercial Finance delayed an unreasonable amount of time to foreclose from [sic] the lease, then the damages suffered which were caused by that delay are to be deducted from the amount that they owe to Commerical Finance.

If you find that Commercial Finance undertook to foreclose on the leasehold but was negligent in the way it handled the foreclosure, then the three endorsers are discharged to the extent of any loss caused by such negligence.

If you find that Commercial Finance should have but failed to dispose of the personal property collateral in a commercially reasonable manner, and if the maker or endorsers were harmed or damaged by Commercial Finance's failure to dispose of the personal property collateral in a commercially reasonable manner, then American Resources Limited and the endorsers are entitled to have the amount of the damages sustained set off against any amount to which Commercial Finance would otherwise be entitled.

It is the duty of a person who has been damaged to use reasonable care and diligence to avoid loss, and to minimize the damages and to use reasonable means to prevent the aggravation of such damages.

When one does not use reasonable care and diligence to avoid loss and to minimize the damages, he may not recover for losses which could have been prevented by reasonable efforts on his part or by expenditures that he might reasonably have made.

The doctrine of avoidable consequences applies to this case. The doctrine of avoidable consequences means that a party can not [sic] recover damages flowing from consequences which that party could reasonably have avoided.

Applying that doctrine to this case, means that if Commercial Finance could have acted differently th[a]n it did, and thereby have avoided some or all of the damages it is claiming, then they had no right to recover the damages that could have been avoided.

Applying the doctrine of avoidable consequences to the art

works and furnishings, if you find that Commercial Finance could reasonably either have done more than it did to obtain possession of the art works and furniture or could have done it sooner, and if you find that if Commercial had obtained possession of the art and furnishings they would have been sold to pay down the note, then from the date when you find that Commercial could have had possession of the art work and collateral, if it had acted sooner or done more, you should not award Commerical any damages for interest or late charges after that date.

Applying the doctrine of avoidable consequences to the leasehold, if you find that Commercial Finance could have foreclosed earlier or that the premises could have been sublet, then form the date when you find that the foreclosure could have been completed or the premises sublet, you should not award Commercial Finance any damages for interest or late charges after that date.

Commercial Finance would be considered to have impaired the collateral if its actions or failure to act when it had a duty to do so caused the value of the collateral to be diminished or when it acts in a way which makes the collateral unavailable to the endorsers.

The Uniform Commercial Code is the law in Hawaii. Applied to this case the Uniform Commercial Code provides that American Resources Limited and the endorsers are discharged from any liability on the note to the extent that Commercial Finance unjustifiably impaired the collateral given to secure the note.

The jury answered the following special verdict form questions as follows:

1. Do you find that any of the defendants are liable for payment of all or any part of the note?

    Answer: Yes   1       No   11  

                    \*    \*    \*

4. Do you find that Commercial Finance, Limited was negligent in processing the foreclosure or in obtaining the return of the personal property collateral?

    Answer: Yes   11       No   1  

5. If so, do you find that any of the defendants suffered any damages as a result of Commercial Finance, Limited's negligence?

    Answer: Yes   10       No   2  

6. If your anwer is "yes", which of the following defendants do you find suffered any damages as a result of Commercial Finance, Limited's negligence?

| American Resources, Limited | 10 |
| Carl J. Bernhardt | 0 |
| Michael F. McCarthy | 4 |
| Clifford N. Gamble, Sr. | 0 |

7. What is the total amount of damages you find was suffered by the injured defendant(s)?

$ NONE - ZERO DOLLARS

In conformity with the jury's special verdict in Civil 71593, the lower court on June 18, 1984 entered a judgment denying CF any recovery from AR and the accommodation indorsers.

The total amount claimed by CF as of May 1, 1984 was $301,955.47. The lower court awarded Gamble $75,488.79 (which is 24.999 percent of $301,955.47) for attorney fees. It also awarded a total of $46,797.10 (which is 15.498 percent of $301,955.47) to the other defendants for attorney fees.

In their answering brief the accommodation indorsers stated in relevant part as follows:

AR and Appellees therefore argued at trial essentially four (4) defenses: (1) that CF had acted in a commercially unreasonable manner in collecting upon its debt and therefore absolved AR and Appellees from liability; (2) that CF had unjustifiably impaired the collateral and therefore discharged AR and Appellees from liability to the extent of the impairment; (3) that CF had failed to mitigate its damages; and (4) that CF has failed to avoid the damages which it claimed.

\* \* \*

As a threshold matter, the issue of whether the jury instructions relating to the impairment of collateral were erroneous is moot because the jury did not rely upon the impairment-of-collateral defense in reaching its verdict in favor of Appellees. The Special Verdict interrogatories readily confirm that while the jury found that CF was negligent in obtaining the return of the personal property collateral or in processing the real property foreclosure, it nonetheless found that neither AR nor the Appellees suffered any monetary damages. ... Hence, there was no *pro tanto* reduction of the debt by

virtue of any perceived impairment. Instead the jury relied upon Appellees' other defenses of failure to mitigate or award [sic] damages and of commercial unreasonableness in debt collection to absolve them from liability, i.e., if a creditor acts in a commercially unreasonably [sic] manner in the collection of a debt and retains collateral for an unreasonable length of time without disposing of it or returning it, it will be deemed to have accepted the collateral in total satisfaction of the debt. [Footnote omitted.]

Therefore, the accommodation indorsers clearly admit that when the jury decided that none of the three of them were liable for payment of any part of the note, it did not rely on any defense that involved the *pro tanto* reduction of the debt. Their admission coincides with our interpretation of the jury's verdict.[4] They also admit that their defense (s) is a *pro tanto* defense and again we agree. They contend, however, that their defenses (1), (3), and (4) are absolute defenses. This time we disagree.

In our view, none of the four asserted defenses are absolute defenses. All merit only a *pro tanto* reduction of the debt by the amount of the consequential damages. According to the jury, the amount of consequential damages suffered by defendants was "NONE - ZERO DOLLARS". Consequently, the only possible justification for the jury's verdict is an absolute defense wherein the jury found that CF agreed to retain and accept the personal property[5] and/or the office lease in total satisfaction of the debt. We conclude, however, that there is no evidence in the record to support such a finding. Therefore, the jury's verdict and the resulting judgment in favor of the accommodation indorsers must be vacated.

In an effort to assist the trial court on remand, we will discuss the applicable law, but only with respect to the personal property collateral.

---

[4]There is evidence in the record that the office lease collateral had a value of $170,000 when the loan was made. There is no evidence in the record of its market value when AR defaulted. There is also evidence that the invoice value of the personal property collateral was between $270,000 and $308,000 when the loan was made. There is no evidence of its market value then or at any time thereafter.

[5]If CF retained and accepted the personal property in total satisfaction of the debt and thereby lost its claim against AR and the accommodation indorsers, then CF acquired AR's and the accommodation indorsers' rights to the personal property.

The trial court instructed the jury, *inter alia,* that CF was in constructive possession of the personal property collateral when it had the legal right to, but did not, obtain a court order compelling PL to return it to AR; that a secured party in constructive possession of the collateral must retain it in satisfaction of the debt, dispose of it in a commercially reasonable manner, or return it to the debtor; and that a finding that CF had constructive possession of the collateral for an unreasonable length of time required a further finding that CF elected to retain the collateral in satisfaction of the debt. We conclude that there is no basis in HRS chapter 490[6] for the application in this case of the fictions of constructive possession, constructive acceptance, or constructive satisfaction. We also conclude that the doctrine of avoidable consequences cannot be used to amend HRS §§ 490:9-207 and 490:3-606(1)(b) by imposing additional duties on secured parties and holders.

HRS § 490:9-207 (1985), which covers the situation where the secured party[7] is in possession of personal property collateral, provides as follows:

Rights and duties when collateral is in secured party's possession. (1) A secured party must use reasonable care in the custody and preservation of collateral in his possession. In the case of an instrument or chattel paper reasonable care includes taking necessary steps to preserve rights against prior parties unless otherwise agreed.

(2) Unless otherwise agreed, when collateral is in the secured party's possession

(a) Reasonable expenses (including the cost of any insurance and payment of taxes or other charges) incurred in the custody, preservation, use or operation of the collateral are chargeable to the debtor and are secured by the collateral;

(b) The risk of accidental loss or damage is on the debtor to the extent of any deficiency in any effective insurance coverage;

(c) The secured party may hold as additional security any increase or profits (except money) received from the collateral, but money so received, unless remitted to the debtor, shall be

---

[6]HRS chapter 490 is Hawaii's version of the Uniform Commercial Code.

[7]HRS § 490:9-105(1)(n) provides in part: "'Secured party' means a lender, seller or other person in whose favor there is a security interest, including a person to whom accounts or chattel paper have been sold."

applied in reduction of the secured obligation;

(d) The secured party must keep the collateral identifiable but fungible collateral may be commingled;

(e) The secured party may repledge the collateral upon terms which do not impair the debtor's right to redeem it.

(3) A secured party is liable for any loss caused by his failure to meet any obligation imposed by the preceding subsections but does not lose his security interest.

(4) A secured party may use or operate the collateral for the purpose of preserving the collateral or its value or pursuant to the order of a court of appropriate jurisdiction or, except in the case of consumer goods, in the manner and to the extent provided in the security agreement.

HRS § 490:3-606(1)(b) (1985), which covers the secured holder[8] whether in possession of the personal property collateral or not, provides as follows:

Impairment of recourse or of collateral. (1) The holder discharges any party to the instrument to the extent that without such party's consent the holder

\*   \*   \*

(b) Unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

HRS § 490:1-106(1) provides as follows:

Remedies to be liberally administered. (1) The remedies provided by this chapter shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed but neither consequential or special nor penal damages may be had except as specifically provided in this chapter or by other rule of law.

HRS § 490:1-201(2) provides as follows: "'Aggrieved party' means a party entitled to resort to a remedy."

---

[8]HRS § 490:1-201(20) provides: "'Holder' means a person who is in possession of a document of title or in an instrument or an investment security drawn, issued or indorsed to him or to his order or to bearer or in blank."

With respect to the duties of secured parties and secured holders toward the personal property collateral, the Uniform Commercial Code appears not yet to have achieved its underlying purpose of simplicity and uniformity. *See* HRS § 490:1-102(1) and (2).

HRS § 490:9-207 applies only to secured parties in possession of the collateral. There is no comparable section applicable to secured parties not in possession of the collateral. HRS § 490:3-606(1)(b) applies to secured holders whether in possession of the collateral or not.

We conclude that HRS § 490:3-606(1)(b) imposes essentially the same duties on secured holders in possession of the collateral as HRS § 490:9-207 imposes on secured parties in possession of the collateral.[9] However, the duties imposed by HRS § 490:3-606(1)(b) on secured holders not in possession of the collateral are less than the duties imposed by it on secured holders in possession of the collateral.

In *Bank of Ripley v. Sadler,* 671 S.W. 2d 454 (Tenn. 1984), the court concluded that unjustifiable impariment means a failure to use reasonable care under all the relevant circumstances of the case. That definition omits two of the three essential elements of unjustifiable impairment. In our view, there is no unjustifiable impairment unless there is a duty, a breach of that duty, and consequential damages. The question of whether a duty exists is a question of law.

In 2A Bender's Uniform Commercial Code Service § 13.24[1], [2] (1987), Professors Hart and Willier define impairment as "whatever increases the surety's risk over what he originally undertook" and conclude that it is possible for a secured holder to unjustifiably impair personal property collateral in the following ways:

1. Improper failure to obtain a recordable or perfectable security interest;

2. Improper failure to properly or timely record or perfect a security interest;

3. Improper failure to enforce the security interest;

4. Improper delay in enforcement of the security interest;

---

[9]Comment 5 to HRS § 490:3-606 states as follows:

Paragraph (b) of subsection (1) is new. The suretyship defense stated has been generally recognized as available to indorsers or accommodation parties. As to when a holder's actions in dealing with collateral may be "unjustifiable", the section on rights and duties with respect to collateral in the possession of a secured party (Section 9-207) should be consulted.

5. Improper enforcement of the security interest; and

6. Improper failure to challenge the claimed interest of third persons in the collateral.

To this list we add the following possibility:

7. Improper obstruction of reasonable actions by the debtor, the surety, or the person in possession with respect to collateral that is decreasing in value.

There is no evidence that this case involves possibilities 1, 2, or 7 with respect to the personal property collateral.

In our view, there is no evidence that it involves possibility 3. A secured holder can be held liable for failure to enforce the security only when it has a duty to enforce the security. Under HRS § 490:9-501[10] the

---

[10]HRS § 490:9-501 (1985) provides in part as follows:

Default; procedure when security agreement covers both real and personal property. (1) When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this Part and except as limited by subsection (3) those provided in the security agreement. He may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure. If the collateral is documents the secured party may proceed either as to the documents or as to the goods covered thereby. A secured party in possession has the rights, remedies and duties provided in section 490:9-207. The rights and remedies referred to in this subsection are cumulative.

(2) After default, the debtor has the rights and remedies provided in this Part, those provided in the security agreement and those provided in section 490:9-207.

(3) To the extent that they give rights to the debtor and impose duties on the secured party, the rules stated in the subsections referred to below may not be waived or varied except as provided with respect to compulsory disposition of collateral (subsection (3) of section 490:9-504 and section 490:9-505) and with respect to redemption of collateral (section 490:9-506) but the parties may by agreement determine the standards by which the fulfillment of these rights and duties is to be measured if such standards are not manifestly unreasonable:

(a) Subsection (2) of section 490:9-502 and subsection (2) of section 490:9-504 insofar as they require accounting for surplus proceeds of collateral;

(b) Subsection (3) of section 490:9-504 and subsection (1) of section 490:9-505 which deal with disposition of collateral;

(c) Subsection (2) of section 490:9-505 which deals with acceptance of collateral as discharge of obligation;

(d) Section 490:9-506 which deals with redemption of collateral; and

(e) Subsection (1) of section 490:9-507 which deals with the secured party's liability for failure to comply with this Part.

(4) If the security agreement covers both real and personal property, the secured party may proceed under this Part as to the personal property or he may proceed as to both the real and the personal property in accordance with his rights and remedies in respect of the real property in which case the provisions of this Part do not apply.

secured party's right to proceed against the personal property collateral is generally optional. *Keller v. LaRissa, Inc.*, 60 Haw. 1, 586 P.2d 1017 (1978). Consequently, there is no provision in HRS § 490:9 other than HRS § 490:9-505[11] that requires the secured party in possession to dispose of the personal property collateral; there is no provision in HRS § 490:9 that requires the secured party who never had possession of the personal property collateral to take possession of it; and there is no provision in HRS § 490:9 other than HRS § 490:9-505 that requires any secured party to proceed against the personal property collateral in the event of default.

Therefore, we agree in principle with the following statement of the law.

> It appears to be well established that apart from an express statutory provision in that regard or an agreement between the parties (or possibly circumstances creating some controlling equity), the mere passive failure or delay on the part of the holder of a note to enforce collateral security available to him is not of itself sufficient to operate as a release of an indorser of the note from liability thereon. This rule applies to accommodation indorsers as well as to indorsers for value and generally to sureties and guarantors. * * * An indorser cannot escape liability on the ground of a holder's failure to resort to

---

[11]HRS § 490:9-505 provides as follows:

Compulsory disposition of collateral; acceptance of collateral as discharge of obligation. (1) If the debtor has paid sixty per cent of the cash price in the case of a purchase money security interest in consumer goods or sixty per cent of the loan in the case of another security interest in consumer goods, and has not signed after default a statement renouncing or modifying his rights under this Part a secured party who has taken possession of collateral must dispose of it under section 490:9-504 and if he fails to do so within ninety days after he takes possession the debtor at his option may recover in conversion or under section 490:9-507(1) on secured party's liability.

(2) In any other case involving consumer goods or any other collateral a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor if he has not signed after default a statement renouncing or modifying his rights under this subsection. In the case of consumer goods no other notice need be given. In other cases notice shall be sent to any other secured party from whom the secured party has received (before sending his notice of the debtor or before the debtor's renunciation of his rights) written notice of a claim of an interest in the collateral. If the secured party receives objection in writing from a person entitled to receive notification within twenty-one days after the notice was sent, the secured party must dispose of the collateral under section 490:9-504. In the absence of such written objection the secured party may retain the collateral in satisfaction of the debtor's obligation.

collateral where the indorser had full opportunity to preserve the security by paying the balance due on the note and exercising his right of subrogation to the security upon such payment.

11 Am. Jur. 2d *Bills and Notes* § 956 (1963) (footnotes omitted).

Possibility 4 involves the delay in enforcement when the secured holder has a duty to enforce the security but procrastinates before commencing to do so. Possibility 5 includes the delay in enforcement when the secured holder has commenced enforcement proceedings but procrastinates thereafter. There is no evidence that this case involves possibilities 4 or 5 with respect to the personal property collateral.

This case involves possibility 6 with respect to the personal property collateral, but the evidence indicates that CF satisfied its duty in that respect.

The penalty imposed by HRS § 490:3-606(1)(b) for the secured holder's breach of duty with respect to the personal property collateral is a *pro tanto* reduction of the amount owed to the secured holder "to the extent" of the amount of the consequential damages suffered by the debtor or the surety. *Bank of Ripley v. Sadler, supra; Huey v. Port Gibson Bank,* 390 So.2d 1005 (Miss. 1980); *Schauss v. Garner,* 590 P.2d 1316 (Wyo. 1979).

HRS §§ 490:3 and 490:9 do not apply to real property. Consequently, the duties previously discussed may or may not apply to the office lease collateral. With respect to both the personal property collateral and the real property collateral, however, the ultimate question whether the secured holder unjustifiably impaired the collateral cannot be answered until the following questions are answered: (1) Did the secured party or holder owe a duty to the debtor or the accommodation indorsers with respect to the collateral? (2) Did the secured party or holder breach that duty? (3) What is the amount, if any, of the consequential damages. Question (1) is a question of law. Questions (2) and (3) are questions of fact as to which the debtor and the accommodation indorsers have the burden of proof.

Accordingly, as to all appellees other than AR, we vacate the June 18, 1984 judgment and the two October 15, 1984 orders awarding attorney fees, reverse the October 15, 1984 order denying CF's motion for new trial, and remand for further proceedings consistent with this opinion and applicable law.

The June 18, 1984 judgment denying CF's claim against AR has been

appealed by CF, but we cannot decide the appeal because AR is protected by the automatic stay provisions of the Bankruptcy Code. *See* 9 Am. Jur. 2d *Bankruptcy* § 38 (1980). In our view, neither AR's bankruptcy nor the existence of the appealed June 18, 1984 judgment denying CF's claim against AR precludes upon retrial the issuance of a judgment granting in whole or part CF's claim against the accommodation indorsers. The Bankruptcy Code's protection of the bankrupt debtor does not extend to accommodation indorsers of the bankrupt debtor's debts. *See Ace Tile Co., Inc. v. Casson Const. Co., Inc.*, 715 P.2d 344 (Colo.App. 1986). Moreover, under the peculiar circumstances of this case, where CF's appeal of the judgment denying CF's claim against AR cannot be decided because AR is protected by the Bankruptcy Code, the appealed June 18, 1984 judgment denying CF's claim against AR is not entitled to *res judicata* effect with respect to CF's claim against the accommodation indorsers of AR's debt.

*Jack C. Morse, James E. Ross,* and *Gordon D. Nelson* (*Morse, Nelson & Ross* of counsel) on the briefs for plaintiff-appellant.

*A. Bernard Bays* and *James A. Kawachika* (*Bays, Deaver, Hiatt, Kawachika & Lezak* of counsel) on the brief for defendant-appellee Clifford N. Gamble, Sr.

*Peter Donahoe* (*Boyce R. Brown, Jr.* and *Terry L. Day, Brown & Johnston* of counsel, on the brief) for defendants-appellees Carl J. Bernhardt, Michael F. McCarthy and American Resources, Limited.