919 P.2d 1018

**HAWAII BROADCASTING COMPANY, INC., Plaintiff–Appellee,**

v.

**HAWAII RADIO, INC., Charles Carrell, Iris Lindstedt, Richard Romas and Judy Romas, Defendants–Appellants.**

No. 16982.

Intermediate Court of Appeals of Hawai'i.

July 16, 1996.

---

Tim E. DeSilva, on the brief, for defendants-appellants.

Robert J. Hackman and Lennes N. Omuro (Goodsill Anderson Quinn & Stifel, of counsel), on the brief, Honolulu, for plaintiff-appellee.

Before WATANABE and ACOBA, JJ., and CRANDALL, Circuit Judge, in place of BURNS, C.J., Recused.

ACOBA, Judge.

Defendants–Appellants Charles Carrell (Carrell) and Iris Lindstedt (collectively, the Appellants) are the parties remaining[1] in an appeal from a Judgment filed on March 1, 1993, in favor of Plaintiff–Appellee Hawaii Broadcasting Company, Inc. (Creditor). This appeal stems from a series of motions for summary judgment Creditor filed which culminated in a March 1, 1993 Judgment in Creditor's favor.[2]

We affirm.

## I.

Creditor sold two radio stations to Hawaii Radio, Inc. (Hawaii Radio) for $800,000. Hawaii Radio financed the purchase by paying Creditor $200,000 and executing a promissory note to Creditor for the remaining $600,000. Appellants, along with Richard and Judy Romas (collectively Guarantors), also executed and delivered a guaranty for payment of the $600,000 to Creditor. At the

---

1. At the onset of this litigation, the defendants also included Hawaii Radio, Inc. (Hawaii Radio), Richard Romas and Judy Romas, in addition to the two appellants here. Hawaii Radio filed for bankruptcy on June 21, 1991, less than a month after the complaint was filed, eliminating it as a party to the litigation. On August 16, 1994, a Stipulation for Dismissal With Prejudice of the Appeal of defendants-appellants Richard Romas and Judy Romas was filed. Only the appeal of Charles Carrell and Iris Lindstedt (collectively, the Appellants) remains.

2. The record on appeal does not contain, nor are there any transcripts from the hearings on the motions for summary judgment, any indication that the transcripts were requested, or a certificate to indicate that "no such parts of the proceedings are to be ordered[.]" Hawai'i Rules of Appellate Procedure Rule 10(b)(1). The minute orders for the hearings on all three summary judgment motions do not indicate that any evidence was presented during the hearings. The transcripts of the hearings, therefore, are unnecessary for determination of the issues on appeal.

time the promissory note and guaranty were executed, each guarantor was a twenty-five-percent shareholder of Hawaii Radio's outstanding stock.

The procedural history of the case is as follows.

On May 28, 1991, Creditor filed a complaint against Hawaii Radio and Guarantors alleging that Hawaii Radio "failed to pay" under the terms of the promissory note, and that pursuant to the guaranty agreement, Guarantors owed Creditor the unpaid balance on the promissory note.

On July 9, 1991, Guarantors filed an answer admitting that a promissory note for $600,000 was executed by Hawaii Radio and delivered to Creditor, and that "indebtedness evidenced by the ... promissory note was secured by ... a guarantee dated August 22, 1989, signed by [Guarantors]." The answer, however, raised affirmative defenses of misrepresentation, estoppel, "unclean hands," and lack of mutual assent.

Guarantors also filed a counterclaim, contending that in "the execution of the Promissory Note and the Guaranty, [Creditor] negligently, recklessly and knowingly omitted, failed to disclose, and/or misrepresented material facts concerning the ... purchase and sale" of the radio stations, and that Creditor's conduct constituted unfair and deceptive practices under chapter 480 of the Hawai'i Revised Statutes (HRS). Creditor allegedly (1) misrepresented revenue figures, and (2) failed to disclose (a) the common ownership between Creditor "and several of the radio stations [sic] customers and clients," and (b)

"included revenues from related corporations or entities" in the financial information Creditor provided to Guarantors.

On July 18, 1991, Hawaii Radio filed a notice of bankruptcy petition with the circuit court. The petition was filed in the United States Bankruptcy Court, Central District of California.

Creditor answered Guarantors' counterclaim on July 26, 1991, and on September 9, 1991, served Guarantors with its requests for admissions, for answers to interrogatories, and for production of documents in an attempt to discover the basis of Guarantors' defenses and counterclaim. Guarantors forwarded only its response to the requests for admissions to Creditor.[3] As a result, on December 26, 1991, Creditor filed a Motion to Compel Discovery against Guarantors.

Creditor subsequently filed three summary judgment motions. We review each *seriatim.*

## II.

### A.

" 'On appeal, an order of summary judgment is reviewed under the same standard applied by the trial courts.' " *Pacific Int'l Services Corp. v. Hurip,* 76 Hawai'i 209, 213, 873 P.2d 88, 92 (1994) (quoting *Reyes v. Kuboyama,* 76 Hawai'i 137, 138, 870 P.2d 1281, 1282 (1994)). " 'Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

**3.** Creditor received Guarantors' response to Creditor's requests for admissions on October 9, 1991. Guarantors denied (1) that payments under the promissory note for April and May 1991 were due or that Hawaii Radio failed to make the payments or that the payments were ten days past due; (2) that Hawaii Radio owed Creditor the unpaid balance on the promissory note, together with interest which amounted to $589,-468.72; and (3) that Creditor demanded payment from them as Guarantors or that they honored that demand.

Guarantors admitted that the promissory note provided that in the event Hawaii Radio failed to pay under the note within ten days after payment was due or defaulted under the security agreement, the balance of the outstanding principal under the note became immediately due.

Guarantors did not make the response part of the record on the first motion for summary judgment filed on March 10, 1992. The response was not made part of the record until the second motion for partial summary judgment was filed on October 19, 1992, when it was included as Exhibits G, H, I, and J of Creditor's motion. By that time, the court had already granted summary judgment on the first motion, finding that Guarantors had failed to pay amounts owing under the note. The affidavit of Creditor's counsel initially identified these exhibits as "Responses to Interrogatories received on May 11, 1992[,]" but the actual exhibits that appear on the record are Guarantors' responses to Creditor's requests for admissions.

that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting *Kaapu v. Aloha Tower Dev. Corp.*, 74 Haw. 365, 379, 846 P.2d 882, 888 (1993) (citations and internal quotation marks omitted)).

■ On March 10, 1992, Creditor filed its first motion for summary judgment against Guarantors for $589,468.72, the amount owed under the promissory note, plus interest, and for dismissal of Guarantors' counterclaim. The motion was supported by an affidavit of Michael Chagami (Chagami), Creditor's treasurer. According to Chagami's affidavit, he was personally involved in the sale of the two radio stations. He stated that: Hawaii Radio had failed to make two monthly payments under the promissory note; because of this default, the note's entire balance was due; and Creditor had sent letters to Guarantors demanding payment. The guaranty states in part as follows:

> [Guarantors], jointly and severally, unconditionally and absolutely guarantee the due and punctual payment to [Creditor] of all amounts of principal and interest payable pursuant to that certain Promissory Note in the principal amount of SIX HUNDRED THOUSAND AND NO/100 DOLLARS ($600,000.00) ... executed by [Hawaii Radio].... If [Hawaii Radio] defaults in any payment of the Note according to its terms, the Guarantors will pay to [Creditor] the unpaid balance thereon on demand.

With respect to Guarantors' defenses, Chagami asserted that he provided the financial records relating to the radio stations for Guarantors to review, that "all financial statements and information concerning [Creditor] provided ... to ... Guarantors fairly presented the financial condition of [Creditor] as of the respective dates of such financial statements and information[,]" Creditor "did not provide any information ... which was false or misleading in any material respect," and that he answered all of Guarantors' questions to their apparent satisfaction.

In opposition, Guarantors contended that Creditor failed to mitigate its damages, and unjustifiably impaired the collateral, thus breaching its duty of good faith and fair dealing. Specifically, Guarantors asserted that Creditor had "unjustifiably impaired the collateral by failing to obtain a recordable or perfectible security interest and/or by failing to properly or timely record or perfect its' [sic] security interest."

Accordingly, Guarantors reasoned that the amount owed to Creditor should be reduced "at the very least ... [by] the difference [in] the amount which [Creditor] would [have] receive[d] from the sale of the radio station from the bankruptcy court if it had a perfected security interest as opposed to the amount which it will actually receive from the bankruptcy court, based upon its [sic] unperfected security interest."

Guarantors filed the affidavits of the defendants Richard Romas (Romas) and Carrell in response. The two affidavits are essentially identical and set forth two basic propositions: (1) "[Creditor] failed to disclose ... that some of its customers and some of the advertising revenue generated by the radio station were generated by companies and entities which had common ownership interest with [Creditor,]" and that the affiants would not have executed the guaranty if they had known of the "common ownership interests[,]" and (2) Creditor "failed to timely record and/or perfect its security interest[,] ... [that Guarantors] detrimentally relied on the fact and promise that [Creditor] was going to have a perfected security interest ... [and that they] would not have executed the Guaranty if [they] knew or believed that [Creditor] would ... [have] only an unperfected security interest in" Hawaii Radio's property. Also, a report attached as an exhibit to the affidavits indicates that Creditor had not filed a financing statement pursuant to the Hawai'i Uniform Commercial Code (UCC) to perfect its security interest in Hawaii Radio's property.

Guarantors did not dispute Creditor's contentions that Hawaii Radio had failed to make payments under the promissory note and that Guarantors had not made payments under the guaranty.

The court filed an order on April 29, 1992, granting in part, Creditor's first motion for

summary judgment. In its order, the court held that "[Guarantors] failed to pay the amounts owing under the Promissory Note and the Guaranty dated August 22, 1989." [4]

Creditor presented evidence supporting its claim that Guarantors had not made the required payments under the promissory note and guaranty. Therefore, Guarantors were under an obligation to refute this evidence. *GECC Fin. Corp. v. Jaffarian*, 79 Hawai'i 516, 521, 904 P.2d 530, 534 (App.) ("when the moving party satisfies its initial burden of production . . . the burden shift[s] to the non-moving party to respond to the motion for summary judgment and demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial"), *cert. granted*, 79 Hawai'i 341, 902 P.2d 976, *aff'd*, 80 Hawai'i 118, 905 P.2d 624 (1995). Because Guarantors did not present evidence refuting Creditor's contention that Guarantors had failed to make the required payments, we affirm the partial summary judgment on this issue.[5]

### B.

Since the court found "disputed issued [sic] regarding whether [Guarantors] are liable for the entire amount owing . . . [due to] the affirmative defenses[,]" it "defer[red] consideration of the [ ] affirmative defenses[.]" The court ruled, however, that Creditor could "later renew its motion for summary judgment as to [Guarantors'] affirmative defenses."

### C.

The defenses of impairment of collateral and failure to mitigate damages were not pled as affirmative defenses in Guarantors'

answer but were raised only in Guarantors' memorandum in opposition to the first summary judgment motion. Creditor argues on appeal that Guarantors had waived the affirmative defenses of impairment of collateral and failure to mitigate damages because these defenses were not pleaded as required by Hawai'i Rules of Civil Procedure (HRCP) Rule 8(c).[6] Because HRCP Rule 8(c) is similar to its federal counterpart, we turn to sources interpreting the federal rules for guidance.

The primary purpose of requiring affirmative defenses to be pleaded is to give notice to the parties of such defenses. 6A C. Wright, A. Miller, M. Kane, *Federal Practice and Procedure: Civil 2d* § 1492, at 12 (1990). Under the liberal amendment practice of the civil procedure rules, "issues not raised by the pleadings [that] are tried by express or implied consent of the parties, . . . shall be treated in all respects as if they had been raised in the pleadings." HRCP Rule 15(b). Therefore, the " '[f]ailure to plead an affirmative defense is immaterial if evidence of the defense is introduced and not objected to for failure to plead it, and no surprise is claimed.' " *Godoy v. Hawaii County*, 44 Haw. 312, 322, 354 P.2d 78, 83 (1960) (quoting 2 J. Moore, *Moore's Federal Practice* at 1696 n.30 (2d ed.)). *See also Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir.1993) (affirmative defense can be raised for the first time on summary judgment absent prejudice).

In its first summary judgment motion ruling, the trial court deferred consideration of the defenses of failure to mitigate and impairment of collateral. Creditor did not object to Guarantors' failure to plead these affirmative defenses when it filed its second

**4.** The court found that "[t]he principal balance owing on the Promissory Note [was] $589,-568.72," plus interest.

**5.** On appeal, Guarantors do not appear to contest the court's partial granting of Creditor's first summary judgment motion.

**6.** Hawai'i Rules of Civil Procedure (HRCP) Rule 8(c) states as follows:

(c) **Affirmative Defenses.** In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.

and third motions for summary judgment but instead presented affidavits and exhibits opposing the affirmative defenses not pleaded by Guarantors. Consequently, we treat Guarantors' failure to plead these defenses as immaterial because the parties and the court proceeded as if the defenses had been properly pled.

### III.

On October 19, 1992, Creditor filed its second motion for partial summary judgment against Guarantors.

■ At this stage of the litigation, the bankruptcy court had already issued an order approving the sale of Hawaii Radio's assets for $370,000 and an Order Granting [Hawaii Radio's] Motion to Authorize Partial Distribution of Sales Proceeds to Secured Creditors filed on May 29, 1992. Since Creditor did not have a perfected security interest in Hawaii Radio's assets, Creditor did not share in the distribution of the sales proceeds.[7] However, Creditor's position was that summary judgment was appropriate on any sum owing on the promissory note which could not have been recovered after a sale of the assets in bankruptcy.

### A.

Creditor's second motion for summary judgment contended that (1) discovery had not disclosed any genuine issue of fact concerning Guarantors' affirmative defenses and counterclaim, and (2) even if there had been impairment of collateral, Creditor was enti-

tled to summary judgment "for that amount due under the promissory note which would not have been recoverable in [b]ankruptcy ... even had [the] note enjoyed a secured position."

### B.

#### 1.

■ Attached to the second motion for summary judgment was another affidavit from Chagami. With respect to the issue of nondisclosure of information raised by Romas's and Carrell's affidavits, Chagami stated, in addition to his statements from the first affidavit, that the negotiations for purchase of the radio stations were unhurried and lasted several months. According to Chagami, Guarantors went to the radio station offices to view the records. Attached as Exhibit C to Chagami's affidavit were copies of the 1988 and 1989 Domestic Profit Corporation Annual Reports for Creditor and some of Creditor's corporate advertisers. These annual reports were filed with the State Department of Commerce and Business Affairs. Exhibit C listed Creditor's officers and directors as either officers or directors for its corporate advertisers and indicated that all the corporations shared the same mailing address.

Guarantors' limited replies to Creditor's discovery requests on Guarantors' affirmative defenses and counterclaim were made a part of Creditor's motion. The replies were generally evasive and non-responsive.[8] Sig-

---

7. The bankruptcy court directed that the proceeds be used to pay the following: the delinquent amount owed on the lease to Hilo Processing Company, the Internal Revenue Service, the Department of Taxation of the State of Hawai'i, and two secured loans to First Hawaiian Bank.

8. For example, Guarantors responded to the interrogatories concerning their counterclaim allegation that Creditor failed to disclose material information as follows:

> As to the allegations contained in paragraph 7 of the counterclaim:
> (a) Identify each person who has any knowledge of the facts which support your allegations.
> *Answer:*
> John Warren, Mike Chagami, Richard Henderson, and other officers, agents and/or

employees of [Creditor]. Also, Charles Carrell and Richard Romas.
> (b) Identify each document that relates to or in any way supports your allegations.
> *Answer:*
> [Guarantors] object[ ] on the grounds that the question is vague and overbroad. Without waiving the objection, [Guarantors] state[ ] the business, computer, and other written records of the radio station, the Note, the Guaranty, and other documents not identified or discovered at the present time.
> (c) Identify each oral communication that relates to or in any way supports your allegations.
> *Answer:*
> [Guarantors] object[ ] on the grounds that the questions [sic] is vague and overbroad. Without waiving, [sic] the objection, [Guarantors]

nificantly, Guarantors indicated they had "no specific recollection of any oral communication [relating to or supporting the allegations of the counterclaim] at the present time." Additionally, Guarantors indicated that they were "not aware" of making oral or written statements or reports of the subject matter of the litigation to any person or organization or receiving such statements or reports.[9]

Guarantors did not file a memorandum in opposition to the second motion nor did they present any evidence or documents contesting Creditor's affidavits and exhibits.

### 2.

On February 10, 1993, the court filed an order granting Creditor's second motion for partial summary judgment against Guarantors. The court dismissed Guarantors' counterclaim with prejudice and made the following findings of fact:

1. [Guarantors] presented no facts sufficient to comply with Rule 56(e) of the Hawaii [Hawai'i] Rules of Civil Procedure in opposition to [Creditor's] motion.

2. There is no evidence that the sale of the assets of [Creditor] to [Hawaii Radio], was anything other than an arms-length transaction between parties with equal bargaining power.

3. There is no evidence that [Creditor] misrepresented any facts in connection with the sale.

4. There is no evidence that [Creditor] failed to disclose any material facts in connection with the sale.

5. The alleged interrelatedness of companies at the time of the sale was a matter of public record, and therefore [Creditor] had no duty to make any additional disclosures to [Guarantor] with respect to the matter of interrelated companies.

6. Therefore, there is no evidence to support the allegations in the counterclaim of [Guarantors].

The court also concluded that "there [was] no evidence to support the [ ] affirmative defenses of Guarantor[s] [aside from the impairment of collateral defense]." The court's conclusion is supported by the record, and we affirm the court's disposition of the counterclaim and of these defenses. *See* discussion *supra*.

### 3.

The court additionally granted Creditor's request for judgment for the amount due under the promissory note and guaranty which "could not have [been] recovered in any event in the bankruptcy of Hawaii Radio, Inc., namely $219,568.72." It found that the amount "which might have been recovered" in the bankruptcy proceeding "could not have exceeded $370,000 [the sale proceeds of Hawaii Radio in bankruptcy]."

The court, therefore, concluded that Guarantors had "no defense against [Creditor's] claim for $219,568.72," which was "the unpaid balance of the [$589,568.72] principal under the note less the bankruptcy sales price." Hence, the court determined that Guarantors' impairment of collateral defense could only relate to "the bankruptcy sales price of the property of Hawaii Radio ... because that defense relate[d] solely to [Creditor's] alleged failure to take the steps necessary to

state[ ] that [they] *ha[ve] no specific recollection of any oral communication at the present time.*
(d) Identify each fact that relates to or in any way supports your allegations.
*Answer:*
[Guarantors] object[ ] on the grounds that the question is vague and overbroad.
(e) Identify each and every material fact concerning the purchase and sale transaction that you allege [Creditor] omitted, failed to disclose and/or misrepresented.
*Answer:*
[Guarantors] object[ ] on the grounds that the question is vague and overbroad. Without waiving the objection, see Paragraph 7 of the Counterclaim.

(Emphasis in original).
These answers and interrogatories were not attached as an exhibit but were set out in the memorandum only. However, none of the parties objected to this procedure below or on appeal.

9. Interrogatory 10 contained questions six to ten. Question nine asked "[i]f you, or anyone acting on your behalf ... have made or received oral or written statement(s) or report(s) or given any other notice of the events which are the subject matter of this litigation to any person or organization...." Each guarantor answered, "not aware."

enjoy secured creditor status in the bankruptcy proceeding." But the court deferred ruling on "[w]hether the impairment of collateral defense [should] appl[y]" to this amount, i.e., $370,000.[10]

As a result of the foregoing, the court held that Creditor was entitled to judgment as a matter of law to $219,568.72, representing "that portion of the unpaid principal balance of the promissory note guaranteed by [Guarantors] which [Creditor] could not have recovered in any event in the bankruptcy of Hawaii Radio[.]"

### C.

This court has stated that "the non-moving party in a motion for summary judgment supported by affidavit must respond, by affidavit or otherwise, setting forth specific facts showing that there are genuine issues for trial." *Costa v. Able Distrib., Inc.*, 3 Haw. App. 486, 488, 653 P.2d 101, 104 (1982). *See also Briggs v. Hotel Corp. of the Pac. Inc.*, 73 Haw. 276, 286, 831 P.2d 1335, 1341–42 (1992) (summary judgment affirmed when "very little beyond the complaint itself was presented to the lower court"). Aside from the matters stated in the affidavits of Romas and Carrell, Guarantors presented no evidence to counter Creditor's motion.

Guarantors' affidavits filed in response to the first motion for summary judgment, raised the following two issues: (1) nondisclosure of the common ownership of Hawaii Radio and some of its customers, and (2) impairment of the collateral. Otherwise, Guarantors failed to present facts in support of their counterclaim or the affirmative defenses the court ruled on. Guarantors' opposition amounted to "[b]are allegations or factually unsupported conclusions ... insufficient to raise a genuine issue of material fact, and therefore, insufficient to reverse a grant of summary judgment." *Reed v. City and County of Honolulu*, 76 Hawai'i 219, 225, 873 P.2d 98, 104 (1994).

■ As to nondisclosure of the common ownership of Hawaii Radio and some of its customers, Chagami declared that he provided Guarantors with the records. Creditor's Exhibit C revealed that the information which Guarantors claimed was not provided to them was generally available to the public. Guarantors did not refute this evidence. "[A] party opposing the motion for summary judgment must be able to point to some facts which refute the proof of the movant in some material portion.... The non-moving party must come forward with some evidentiary matters to support its position." *Costa*, 3 Haw.App. at 489, 653 P.2d at 104 (citations omitted). Failure to do so means that the non-moving party has not "satisfied its burden of showing that there is a genuine issue of material fact." *Hui Malama Aina O Ko'olau v. Pacarro*, 4 Haw.App. 304, 313, 666 P.2d 177, 183 (1983). The availability of such information disproves the bare contention that Creditor failed to disclose or misrepresented this information.

■ Since Guarantors did not respond to the second motion, they failed to meet their burden of demonstrating that genuine issues of material facts existed with regard to their defenses and counterclaim, and Creditor's request for judgment on the amount Creditor could not have recovered in bankruptcy. "[W]here the plaintiff moves for summary judgment, and properly establishes the lack of a genuine issue of material fact and its entitlement to a judgment as a matter of law ... and the defendant fails to respond, the trial court will have little difficulty in granting the plaintiff's motion...." *GECC Fin. Corp.*, 79 Hawai'i at 526, 904 P.2d at 540 (Acoba, J., concurring). Hence, we hold that the circuit court was correct in granting the second partial motion for summary judgment.

### IV.

On January 4, 1993, Creditor filed a third motion for summary judgment, seeking (1) dismissal of Guarantors' remaining impairment of collateral defense as it related to the amount Creditor could have obtained in the bankruptcy proceedings had it been a se-

---

**10.** The court also deferred ruling on the amount of interest due to Creditor on the unpaid balance of the promissory note and the amount of reasonable attorney's fees and costs.

cured creditor,[11] and (2) entry of judgment against Guarantors for the entire balance of the promissory note. Just as with the second summary judgment motion, Guarantors did not submit a memorandum in opposition to the motion.

The circuit court granted the third motion for summary judgment in favor of Creditor and directed entry of final judgment against Guarantors in the principal amount of $589,468.72 plus interest, attorneys' fees and costs. Judgment was entered accordingly on March 1, 1993.

### A.

On appeal, the Appellants reiterate Guarantors' contention that under HRS § 490:3-606(1)(b) (1985), which is derived from the UCC, their obligation on the guaranty was discharged because Creditor unjustifiably impaired the collateral by failing to obtain and/or perfect its security interest.

Before discussing the impairment of collateral defense, we first examine the applicability of the UCC to the present case.[12] Subject to certain exceptions, see HRS § 490:9-104 (1985), Article 9 of the UCC applies to any transaction intended to create a security interest and to "security interests created by contract." HRS § 490:9-102 (1993). "Contract" is defined as "the total legal obligation which results from the parties' agreement as affected by this chapter and any other applicable rules of law." HRS § 490:1-201(11) (1993). In the present case, the parties' intent to create a security interest in Hawaii

Radio's assets by a contract is evident from the security agreement and the execution of the promissory note, and subjects the transaction to Article 9 of the UCC.

A security interest is defined as "an interest in personal property or fixtures which secures payment or performance of an obligation." HRS § 490:1-201(37) (1993). A security interest may be "perfected." But "[a] security interest is [only] perfected when it has attached and when all of the applicable steps required for perfection have been taken." HRS § 490:9-303(1) (1993).[13] One of the steps necessary to perfection is the filing of a financing statement. HRS § 490:9-302(1) (1985). "The proper place to file in order to perfect a security interest is with the registrar of conveyances, bureau of conveyances." HRS § 490:9-401(1) (1993). "A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed ..., gives an address ... and contains a statement indicating the ... collateral." HRS § 490:9-402 (1993). The purpose of perfection is to protect "the secured party ... against creditors and transferees of the debtor and in particular against any representative of creditors in insolvency proceedings instituted by or against the debtor." Commentary to HRS § 490:9-303 (1993).

### B.

Guarantors assert their impairment of collateral defense under HRS § 490:3-606(1)(b).[14] The statute provides, in part, as follows:

11. The court's February 10, 1993 order reads in relevant part, "The Court defers ruling of the following matters: 1. Whether the impairment of collateral defense applies to that portion of the principal balance of the promissory note which [Creditor] might have recovered in the bankruptcy proceeding had it been a secured creditor[.]"

12. The Uniform Commercial Code was adopted in Hawai'i under Title 27, chapter 490 of the Hawai'i Revised Statutes (HRS).

13. "Attachment" describes the point when the property becomes subject to a security interest. "The requisites for attachment are stated in Section 9-204. When it attaches[,] a security interest may be either perfected or unperfected." Commentary to HRS § 490:9-303 (1993).

14. We note that HRS § 490:3-606(1)(b) (1985) was replaced by HRS § 490:3-605(f) (Supp. 1992) as of January 1, 1992. 1991 Haw. Sess. L. Act 118, §§ 5, 7 at 313. Under the new section, impairment no longer needs to be "unjustifiable," and a failure to perfect an interest in collateral now constitutes an impairment of collateral. HRS § 490:3-605(f). HRS § 490:3-605(f) states as follows:

> If the obligation of a party is secured by an interest in collateral not provided by an accommodation party and a person entitled to enforce the instrument impairs the value of the interest in collateral, the obligation of any party who is jointly and severally liable with respect to the secured obligation is discharged to the extent the impairment causes the party asserting discharge to pay more than that party would have been obliged to pay, taking into

**Impairment of recourse or of collateral.** (1) The holder discharges any party to the instrument to the extent that without such party's consent the holder

. . .

(b) Unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

HRS § 490:3–606(1)(b). A "holder" of a negotiable instrument is defined as "the person in possession of the instrument[,]" in this case, Creditor. HRS § 490:1–201(20) (1993). "[T]he term 'instrument' in HRS § 490:3–606(1)(b) means 'a negotiable instrument[,]'" but does not include a guaranty agreement. *Honolulu Fed. Sav. & Loan Ass'n v. Murphy,* 7 Haw.App. 196, 207, 753 P.2d 807, 814–15 (1988).

■ However, the impairment of collateral defense under HRS § 490:3–606(1)(b) is still available to a guarantor whose guaranty is expressly referred to in a promissory note. *Id.* Thus, the defense is still available to Guarantors since their guaranty is expressly referred to in the promissory note.[15]

■ Before a party can be found to have unjustifiably impaired collateral, there must be "a duty, a breach of that duty, and consequential damages. The question of whether a duty exists is a question of law." *Commercial Fin., Ltd. v. American Resources, Ltd.,* 6 Haw.App. 667, 680, 737 P.2d 1120, 1130 (1987). *Accord Honolulu Fed.,* 7 Haw.App. at 207–08, 753 P.2d at 815; *Hemenway v. Miller,* 116 Wash.2d 725, 807 P.2d 863, 870 (1991) (stating that "initial inquiry in determining if the creditor has unjustifiably impaired the collateral is to ascertain whether the creditor owed any duty to the surety in relation to the collateral").

■ This duty requirement applies equally to secured holders in possession of collateral as well as to secured holders not in possession of collateral. *Commercial Fin.,* 6

Haw.App. at 680, 737 P.2d at 1128. One way a secured holder like Creditor unjustifiably impairs a collateral is by an "[i]mproper failure to obtain a recordable or perfect[i]ble security interest[.]" *Id.* (citing 2A F. Hart & W. Willier, *Commercial Paper Under U.C.C.* § 13.24[1], [2] (1987)).

■ The duty to perfect a security interest can arise from an agreement between the parties, from the UCC, or "from the equities of the facts of the case." *Hemenway,* 807 P.2d at 870. We examine whether a duty arose under any one of these three situations.

1.

■ We conclude that a duty did not arise from any agreement between the parties. It is well settled "that 'terms of a contract should be interpreted according to their plain, ordinary and accepted use in common speech, unless the contract indicates a different meaning.'" *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 108, 839 P.2d 10, 24, *reconsideration denied,* 74 Haw. 650, 843 P.2d 144 (1992) (quoting *SGM Partners v. The Profit Co.,* 8 Haw.App. 86, 123, 793 P.2d 1189, 1212 (1990), *rev'd in part on other grounds,* 71 Haw. 506, 795 P.2d 853 (1990)).

Section 4(b) of the security agreement provides that, "at the *request* of [Creditor], [Hawaii Radio] will join with [Creditor] in executing one or more Financing Statements pursuant to the Uniform Commercial Code in [a] form satisfactory to [Creditor][.]" (Emphasis added.) Under section 5(b), Hawaii Radio agreed to "[e]xecute any additional . . . documents that *may be deemed necessary or advisable by [Creditor]* to effectuate the purpose of this agreement, and pay any filing and recording costs which may be necessary to perfect . . . the security interest created hereunder." (Emphasis added.) Under the plain language of the agreement, a financing

---

account rights of contribution, if impairment had not occurred.
Under this section, the value of an interest in collateral is impaired if there is a "failure to obtain or maintain perfection or recordation of the interest in collateral. . . ." HRS § 490:3–605(g) (1993).

**15.** "A 'note' if it is a promise other than a certificate of deposit" is considered a negotiable instrument. HRS § 490:3–104(2)(d) (1985).

statement would be executed "if deemed necessary or advisable by Creditor."

The promissory note provides that "[p]ayment of indebtedness evidence [sic] by this Note is secured by . . . a Security Agreement . . . encumbering tangible and intangible property of [Hawaii Radio]" but does not require Creditor to perfect its security interest.

It is apparent that neither document expresses a requirement that Creditor perfect its security interest in Hawaii Radio. The language of both documents belies the imposition of a duty to perfect on Creditor. The plain, ordinary and common usage of the words used in the security agreement provided only that Creditor had the option of filing a financial statement. As a result, we conclude that neither the security agreement nor the promissory note obligated Creditor to perfect its security interest.

### 2.

We next determine whether a duty arose under the provisions of the UCC. Section 4(a) of the security agreement indicated that Hawaii Radio was in possession of the collateral. "The Code gives no guide as to what constitutes 'impairment' in the case of non-possessory security interests, . . . whereby the debtor is in possession" of the collateral. 2A F. Hart & W. Willier, *Commercial Paper Under U.C.C.* § 13.24[1][b], at 114 (1994). This court has stated that "the duties imposed by HRS § 490:3-606(1)(b) on secured holders not in possession of the collateral are less than the duties imposed by it on secured holders in possession of the collateral." *Commercial Fin.,* 6 Haw.App. at 680, 737 P.2d at 1128. Thus, unlike a secured holder in possession, Creditor is not subject to the rights and duties listed in HRS § 490:9-207 (1993). Guarantors do not point to any authority under the Code imposing an obligation upon a holder not in possession of the collateral to perfect its security interest. All that remains to be considered, therefore, are the equities of this particular case.

### 3.

The facts do not indicate that it would be inequitable to reject the imposition of a duty to perfect on Creditor.

The security agreement prohibits Hawaii Radio from encumbering the collateral in any way without Creditor's written consent. It also places the burden upon Hawaii Radio to insure the collateral, to pay any taxes affecting it, and to keep it "free from any adverse lien, security interest or encumbrance[.]" These provisions made it unnecessary for Creditor to perfect its security interest because Hawaii Radio agreed to protect the collateral from any other encumbrances. These provisions "militate[ ] against a creditor's duty to protect the collateral solely for the benefit of [Hawaii Radio]." *Hemenway,* 807 P.2d at 870.

Hawaii Radio also had the opportunity to protect the collateral and was, in fact, bound by the security agreement to do so. A general rule is that "no duty [to act affirmatively to preserve security] is owed by the creditor to the surety where the surety is himself [or herself] in a position to preserve the security and fails to do so." *Id.* at 870 (ellipsis omitted) (quoting L. Simpson, *Suretyship* 376 (1950)).

Accordingly, the equities for imposing a duty on Creditor are lacking under the facts. Because we concluded that Creditor was not under a duty to perfect its security interest, we hold that Guarantors' impairment of collateral defense does not apply in the present case.

We hold, then, that the circuit court was correct in granting the third motion for summary judgment.

### V.

Appellants finally argue that, under guaranty law, their obligations were partially discharged because of Creditor's failure to perfect its security interest. They cite *Hawaii Leasing v. Klein,* 5 Haw.App. 450, 698 P.2d 309 (1985), for the general proposition that " 'any action or omission by the creditor in breach of an obligation to the guarantor which injures the guarantor or the rights of the guarantor operates to discharge the guarantor, at least to the extent of the inju-

ry.'" *Id.* at 455, 698 P.2d at 313 (quoting 38 Am.Jur.2d *Guaranty* § 79, at 1086 (1968)). The crucial question regarding the applicability of this general rule is whether Creditor "breached any obligation to [Guarantors] imposed on [Creditor] by the contract of guaranty." *Id.* Since we concluded, *supra,* that Creditor was not under a duty to perfect its collateral, Creditor did not breach any obligation to Guarantors, and consequently, the rule referred to is also inapplicable.

## VI.

Based upon the foregoing reasons, we affirm the lower court's Judgment filed on March 1, 1993.